UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                                                CASE NO. 8:22-cr-437-WFJ-SPF

JOHN LEE

## UNITED STATES' UNOPPOSED MOTION TO TAKE VIDEOTAPED DEPOSITION OF A MATERIAL WITNESS FOR USE AT TRIAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 15

The United States of America, by and through Roger B. Handberg, United States Attorney for the Middle District of Florida, through the undersigned Assistant United States Attorneys, hereby files this unopposed motion, pursuant to Federal Rule of Criminal Procedure 15, requesting a Court Order authorizing the taking of a videotaped deposition, via video-conferencing, of a certain witness in Doha, Qatar, which witness will be unavailable to travel to Tampa to testify at the trial of this case, in order to preserve his testimony for trial. Defendant Lee does not oppose the government's request to take the deposition.

## PERTINENT FACTUAL BACKGROUND

From at least as early as June 2022, and continuing through in or about August 2022, defendant John Lee, through false and fraudulent pretenses, representations, and promises, convinced Victim 1 (M.S.) to mail approximately $90 million worth of jewelry belonging to Victim 2 to him at addresses in Davenport, Florida and Paramus, New Jersey.

For several years, the defendant advertised himself as a psychic and love and relationship advisor on various websites, such as www.purplegarden.com ("Purple Garden").  Purple Garden is a website that allows customers to communicate with psychic advisors. Customers pay the psychic advisor based on the amount of time they communicate in the Purple Garden private chat spaces. The psychic advisors provide a range of services to customers, including mediumship, tarot card readings, and love and career advice. The defendant provided love and relationship advice to M.S. for almost four years. Between August 2018 and August 2022, M.S. made approximately 498 payments totaling approximately $43,542.61 to Purple Garden through PayPal.

In addition to the Purple Garden private chat spaces, in approximately December 2019, the defendant began communicating with M.S. through email, text messaging, phone calls, and WhatsApp.  During M.S.'s and the defendant's communications outside of the Purple Garden chat spaces, the defendant provided M.S. with his PayPal information, as well as his account information at SunTrust Bank (now known as Truist Bank). Between December 2019 and May 2022, M.S. directly sent the defendant approximately $31,980 via the defendant's PayPal account.  In addition, between January 2020 and August 2022, M.S. paid the defendant approximately $51,190.23 via wire transfers to one of his Truist Bank accounts.

During these conversations, the defendant convinced M.S. to mail packages of diamonds and precious gemstones to him via a commercial mail carrier.  Of

pertinent relevance to this motion, in or around August 2022, while in France, M.S. provided a typed statement to M.S.'s employer (Victim 2) and Victim 2's legal representative from Doha, Qatar. Counsel for Victim 2 shared M.S.'s typed statement with other members of Victim 2's legal team, including private counsel in the United States. Victim 2's legal representatives in the United States provided the typed statement to the FBI Tampa Field Office ("FBI TFO").

The statement shared with the FBI TFO related the following information:

M.S., a resident in Doha, Qatar, worked for Victim 2 for many years. In or around August 2018, M.S. began using the website Purple Garden for relationship and love advice.

In or around April 2019, M.S. began corresponding with an individual on Purple Garden who used the username "1111Giovanni1111." M.S. believed "1111Giovanni1111" to be a psychic and a love specialist. M.S. knew "1111Giovanni1111" as "Giovanni," "Gio," and "John Lee."

In or around December 2019, the defendant provided M.S. with contact information and began corresponding via email, text messaging, and WhatsApp, rather than solely through Purple Garden. The defendant provided M.S. with his email address, lifecoachgiovanni@gmail.com and his phone numbers, +1 862 477**** and +1 973518****. The defendant also provided M.S. with his PayPal account information as well as his SunTrust Bank account information for payment for his services. M.S. sent money to the defendant's PayPal account for a period of

3

time, until he requested M.S. send the money directly to his SunTrust Bank account in order to avoid PayPal fees.

During M.S.'s correspondence with the defendant, he provided M.S. guidance in his capacity as a psychic. M.S. met with the defendant in person on at least one occasion in New York prior to June 2022.

In or around June 2022, the defendant directed M.S. to send him some of M.S.'s personal jewelry to be cleansed. M.S. sent the jewelry to him in the hope that he could cleanse the jewelry of bad spirits. M.S. believed the defendant received M.S.'s jewelry and conducted the spiritual actions he promised, before he returned the jewelry to M.S..

After M.S.'s jewelry was returned, M.S. continued to experience negative feelings. The defendant convinced M.S. to send him jewelry belonging to Victim 2, so he could also cleanse Victim 2's jewelry of bad spirits. M.S. agreed to send the defendant jewelry belonging to Victim 2.

M.S. removed the items of jewelry from a safe in the home of Victim 2 and sent them via FedEx to the defendant. M.S. addressed the packages to "John Lee" and sent them to "50 Route 17th North, Paramus, Suite 135, New Jersey 07652" and to "1070 Berry Lane, Davenport, Florida 33857."

The defendant told M.S. that the jewelry would not be returned until August 2022. However, a couple of days before the jewelry was to be returned, the defendant told M.S. that Customs would seize the jewelry if it was mailed back. The defendant

4

directed M.S. to meet him in Cannes, France to personally retrieve the jewelry. However, the defendant did not meet M.S. in Cannes to return the jewelry.

M.S. made several attempts to contact the defendant through phone calls, text messages, and through Purple Garden. The defendant responded to M.S. on rare occasion. For instance, on or about August 23, 2022, M.S. communicated with the defendant via text message requesting the defendant return the jewelry. The defendant responded, "Please stop I do not know what you were talking about I don't think you need a psychic you need a psychiatrist God bless you please stop harassing me." After several failed attempts to retrieve the jewelry from the defendant, M.S. told Victim 2 about the theft.

In November 2022, a Mutual Legal Assistance ("MLA") request was submitted to Qatari authorities. The government requested records, including bank records, correspondence, and shipping records, in the possession of Dukhan Bank, Barwa Bank, FedEx, and M.S. Additionally, the government requested to interview M.S.

On December 20, 2022, M.S. was interviewed by FBI TFO in Doha, Qatar. M.S. confirmed the information in the typed statement was accurate.

A copy of M.S.'s typed statement, as well as an audio/video recording of M.S.'s interview by FBI TFO has been disclosed to the defendant in discovery. M.S.'s testimony is material to the government's ability to prove the charged offenses.

## PERTINENT PROCEDURAL BACKGROUND

The defendant is pending trial on an indictment charging him with four counts of mail fraud, in violation of 18 U.S.C. § 1341, and three counts of interstate transportation of stolen property, in violation of 18 U.S.C. § 2314. *See* Doc. 15. The case is on the September 2023 trial calendar. *See* Doc. 29.

The defendant is currently in custody pending trial in this case.

## MEMORANDUM OF LAW

Federal Rule of Criminal Procedure 15(a) provides that the Court may order that the testimony of a prospective trial witness be taken by deposition whenever, due to exceptional circumstances in the case, it is in the interest of justice to do so. Fed. R. Crim. P. 15(a). The Eleventh Circuit has found that three factors guide the exceptional circumstances analysis: whether (1) the witness is unavailable to testify at trial; (2) injustice will result without the material testimony that the deposition could provide; and (3) countervailing factors render taking the deposition unjust to the nonmoving party. *United States v. Drogoul*, 1 F.3d 1546, 1554 (11th Cir. 1993); *United States v. Ramos*, 45 F.3d 1519, 1522-23 (11th Cir. 1995); *United States v. Smith*, 213 Fed. App'x 774, 777 (11th Cir. 2006); *United States v. Des Marteau*, 162 F.R.D. 364, 367 (M.D. Fla. 1995); *United States v. O'Sullivan*, 553 F.Supp.2d 1349, 1351 (M.D. Fla. 2008).

**The Witness is Unavailable**

In discussing the "unavailability" prong of the Rule 15 analysis, the Eleventh Circuit has held that a witness who is beyond the subpoena powers of the United States is unavailable within the meaning of Rule 15:

> . . . [a] substantial likelihood of unavailability can be found when the proposed deponent is beyond the subpoena powers of the United States and has declared his unwillingness to testify at trial, or even having declared willingness to testify cannot be subpoenaed if he changes his mind.

*Ramos*, 45 F.3d at 1523; *see Drogoul*, 1 F.3d at 1553 (evidence that witnesses are foreign nationals located outside the United States and, thus, cannot be compelled to testify at trial "is potent proof of unavailability for purposes of Rule 15(a)"); *Des Marteau*, 162 F.R.D. at 368; *see also United States v. Jefferson*, 594 F.Supp.2d 655, 665 – 66 (E.D Va. 2009) (as a Nigerian citizen, witness is beyond subpoena power of American courts).

It is not necessary for the moving party to conclusively establish unavailability to warrant the taking of a Rule 15 deposition, as the deposition serves to preserve testimony which the moving party must later establish should be admissible at trial:

> The moving party may demonstrate probable unavailability of a prospective deponent through affidavits or otherwise. . . . Significantly, that showing need not be conclusive before a deposition can be taken. It would be unreasonable and undesirable to require the government to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition. A more concrete showing of unavailability, of course, may be required at the time of trial before a deposition will be admitted into evidence. A potential witness is unavailable for purposes of Rule 15(a), however, whenever a substantial likelihood exists that the proposed deponent will not testify at trial. In that situation, justice usually will be served by

>allowing the moving party to take the deposition, thereby preserving the party's ability to utilize the testimony at trial, if necessary.

*Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993) (internal citations omitted).  Here, M.S. is in custody in Qatar and is beyond the subpoena power of American courts.  Therefore, the government has met its burden of establishing M.S. is unavailable, and the government should be permitted to proceed with the proposed deposition.

**The Witness's Testimony is Material**

To proceed with depositions under Rule 15, the moving party must establish the materiality of the testimony at issue.  "Under *Drogoul*, material is a term of art that means *material to the party moving to depose*."  *Ramos*, 45 F.3d at 1523 (emphasis in original); *Des Marteau*, 162 F.R.D. at 368, 369.  A showing that testimony is material requires the movant to make known to the court and opposing counsel the "thrust of the evidence."  *Des Marteau*, 162 F.R.D. at 368 (quoting *United States v. Sheffield*, 992 F.2d 1164, 1169 (11th Cir. 1993)).  Materiality may be established by several means, including affidavit, proffered testimony, or calling a witness to the stand.  *Ramos*, 45 F.2d at 1523.  It is not, however, necessary that the moving party recite the anticipated testimony "chapter and verse."  *See United States v. Ahmed*, 587 F.Supp.2d 853, 855 (N.D. Ohio 2008).

M.S. had direct correspondence with the defendant.  Within these communications, the defendant convinced M.S. to send approximately $90 million worth of jewelry to the defendant.  M.S. retrieved the jewelry from Victim 2's safe, packaged the jewelry, and mailed it to the defendant.  M.S. also paid the defendant

8

on multiple occasions. M.S. is the only person who can testify about the transactions and the events both preceding and following the mailing of Victim 2's jewelry to the defendant. This testimony is necessary as to each count in the indictment. Thus, the taking of this witness's deposition in Doha, Qatar in order to preserve the testimony for trial is in the interest of justice.

**Countervailing Factors Do Not Render the Depositions Unjust to the Non-moving Party**

According to the Eleventh Circuit, "[w]hen a prospective witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness requires permitting the moving party to preserve that testimony–by deposing the witness–absent significant countervailing factors which would render the taking of the deposition unjust." *Drogoul*, 1 F.3d at 1552. Here, no such countervailing factors exist. Additionally, the defendant does not oppose the taking of the witness's deposition.

<u>Defendant's Presence</u>

The Confrontation Clause guarantees the defendant the right to confront witnesses face-to face. *Maryland v. Craig*, 497 U.S. 836 (1990). This right is not, however, absolute. *Craig*, 497 U.S. at 850 (permitting children witnesses of sexual abuse to testify via close circuit television). In addressing a defendant's right to be present at a deposition, other courts have found that "Rule 15 is not violated by the admission of videotaped testimony so long as the government makes diligent efforts to secure the defendant's physical presence at the deposition and, failing this,

employs procedures that are adequate to allow the defendant to take an active role in the deposition proceedings." *United States v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998) (citing *United States v. Gifford*, 892 F.2d 263, 265 (3rd Cir. 1989), and *United States v. Salim*, 855 F.2d 944, 950 (2nd Cir. 1988)); *see United States v. Mueller*, 74 F.3d 1152, 1156-57 (11th Cir. 1996); *United States v. Sapse*, 2011 WL 1576898 (D. Nev. 2011); accord *United States v. Yates*, 438 F.3d 1307 (11th Cir. 2006) (in holding that trial testimony given via live two-way video conference was required to, but did not, satisfy the requirements of *Craig*, Eleventh Circuit noted that government never requested Rule 15 depositions and suggested same would have been appropriate vehicle for securing witnesses' testimony).

Rule 15(c)(3) addresses a defendant's presence at depositions taken outside of the United States. The rule allows for depositions outside of the United States to be taken without the defendant's presence if the court makes the following findings:

(A)  the witness's testimony could provide substantial proof of a material fact in a felony prosecution;

(B)  there is a substantial likelihood that the witness's attendance at trial cannot be obtained;

(C)  the witness's presence for a deposition in the United States cannot be obtained;

(D)  the defendant cannot be present because:

(i)  the country where the witness is located will not permit the defendant to attend the deposition;

(ii)  for an in-custody defendant, secure transportation and continuing custody cannot be assured at the witness's location; or

10

     (iii) for an out-of-custody defendant, no reasonable conditions will assure an appearance at the deposition or at trial or sentencing; and

  (E) the defendant can meaningfully participate in the deposition through reasonable means.

With this guidance in mind, and for the reasons set forth below, the government proposes that the requested videotaped deposition be taken in Qatar, via live video-conferencing, outside the physical presence of the defendant, but with one member of the defendant's legal team present. It would be the government's intention to take the videotaped deposition at a location to be determined by the Qatari authorities, with a live video-conference feed to the correctional facility in Pinellas County where the defendant is housed or with a live video-conference feed to a secure area where the defendant may be present, so he may confer with his defense counsel. *See United States v. McKeeve*, 131 F.3d 1, 7-10 (1st Cir. 1997) (Confrontation Clause not violated when attorney transported to UK, while defendant remained available via two-way telephone to monitor deposition and confer with counsel); *United States v. Abu Ali*, 528 F.3d 210, 239-242 (4th Cir. 2008) (for Rule 15 deposition, court directed two defense attorneys to attend deposition of Saudi Arabian witnesses, while third attorney sat with defendant at videolinked site). The defendant does not object to this procedure; he will waive his physical presence at the deposition.

  As detailed above, M.S. can provide substantial proof of material facts in a felony prosecution; there is a substantial likelihood that her attendance at trial cannot

be obtained; and the witness's presence for a deposition in the United States cannot be obtained for the same reason her attendance at trial cannot be obtained. *See* Rule 15(c)(3)(A) – (C). Additionally, the defendant has been detained pre-trial, and secure transportation and continuing custody cannot be assured at the witness's location.

The United States does not have a Mutual Legal Assistance Treaty with Qatar, thus there is not a formal agreement between the countries to assist in the secure transport and continuing custody of a defendant for attendance at a deposition. Therefore, it would not be possible to securely transport or maintain continuous custody of the defendant while in Doha, Qatar.

Even if the defendant was an "out-of-custody defendant," the government submits that no reasonable conditions would assure his appearance at the deposition or at a trial or sentencing. *See* Rule 15(c)(3)(D)(iii). The question of what constitutes reasonable conditions for release in a foreign country should be similar to the analysis used when deciding any kind of pretrial release conditions. *See Sapse,* 2011 WL 1576898 (court orders Rule 15 deposition take place via two-way videoconferencing if magistrate who imposed conditions of pretrial release concludes that no conditions can be fashioned to reasonably assure defendant's return and presence at trial). The actions taken to overcome these concerns in order to secure the physical presence of the defendant at a foreign deposition "must be undertaken in good faith, [but] they need not be heroic, and the possibility of using a deposition does not evaporate even if those efforts prove fruitless." *McKeeve*, 131 F.3d at 8.

12

The government submits that any conditions would be inadequate and unenforceable overseas. The U.S. Marshals Service lacks authority to enforce Court rules on foreign soil or to compel the defendant to attend the deposition if the Court should so rule. *See McKeeve,* 131 F.3d at 7.

Accordingly, the interest of justice weighs in favor of the defendant participating in the depositions via video-conference. Additionally, the defendant agrees to participate in the deposition via video-conference.

## POSITION OF DEFENSE COUNSEL

Pursuant to the Local Rules, the government has conferred with defense counsel about this motion. The defendant's counsel, Bjorn Brunvand, has no objection to the government's request to take the deposition of M.S. and has indicated his availability to travel to Qatar to take this deposition. Further, the defendant does not object to the government's proposed procedure for the taking of the deposition; he will waive his physical presence at the deposition.

The parties have discussed the large time zone difference between Tampa, Florida and Doha, Qatar, and the potential for technical complications with the video-conferencing programs and equipment. The government has agreed to request that the USMS release the defendant to the custody of the FBI during the taking of the deposition, so that he may participate in the deposition via video-conference at his counsel's office, rather than from Pinellas County Jail. The FBI will be responsible for transporting the defendant to and from defense counsel's office,

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court grant the government's motion and enter an order under Rule 15 permitting the government to file a notice of deposition on a date between May and July 2023 for M.S. to be deposed in Qatar, via video-conference to a site in Tampa, Florida, where the defendant can be present and participate in the manner described above, with the government to cover all expenses of the recording of the deposition, transcript, videotape, and travel expenses as ordered by the Court.

        Respectfully submitted,

        ROGER B. HANDBERG
        United States Attorney

By: *Tiffany E. Fields*
        Tiffany E. Fields
        Assistant United States Attorney
        Arkansas Bar No. 2012221
        400 N. Tampa St., Ste. 3200
        Tampa, FL 33602-4798
        Telephone: (813) 274-6000
        Facsimile: (813) 274-6358
        E-mail: Tiffany.Fields2@usdoj.gov

By: */s/ Rachelle DesVaux Bedke*
        Rachelle DesVaux Bedke
        Assistant United States Attorney
        Florida Bar No. 0099953
        E-mail: Rachelle.Bedke@usdoj.gov

U.S. v. Lee                                              Case No. 8:22-cr-437-WFJ-SPF

### CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Bjorn Brunvand, Esquire

*Tiffany E. Fields*
Tiffany E. Fields
Assistant United States Attorney
Arkansas Bar No. 2012221
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Tiffany.Fields2@usdoj.gov