AF Approval *RDB for MA*            Chief Approval *RDB*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

CASE NO.: 8:22-cr-437-WFJ-SPF

v.

JOHN LEE
a/k/a "Giovanni"

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, John Lee, a/k/a "Giovanni," and the attorney for the defendant, Bjorn Brunvand, mutually agree as follows:

### A.   Particularized Terms

1.   Counts Pleading To

The defendant shall enter a plea of guilty to Counts Four and Seven of the Indictment.  Count Four charges the defendant with mail fraud, in violation of 18 U.S.C. § 1341.  Count Seven charges the defendant with interstate transportation of stolen property, in violation of 18 U.S.C. § 2314.

2.   Maximum Penalties

Count Four carries a maximum sentence of 20 years of imprisonment, a fine of $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more

Defendant's Initials _JL_

than three years, and a special assessment of $100.  Count Seven carries a maximum

penalty of 10 years of imprisonment, a fine of $250,000, a term of supervised release

of not more than three years, and a special assessment of $100.  With respect to

certain offenses, the Court shall order the defendant to make restitution to any victim

of the offenses, and with respect to other offenses, the Court may order the defendant

to make restitution to any victim of the offenses, or to the community, as set forth

below.

3.  <u>Elements of the Offenses</u>

The defendant acknowledges understanding the nature and elements of

the offenses with which defendant has been charged and to which defendant is

pleading guilty.

The elements of Count Four are:

*First:*  the defendant knowingly devised or participated in a scheme to defraud someone, or obtain money or property, using false or fraudulent pretenses, representations, or promises;

*Second:*  the false or fraudulent pretenses, representations, or promises were about a material fact;

*Third:*  the defendant intended to defraud someone; and

*Fourth:*  the defendant used a private or commercial interstate carrier by depositing or causing to be deposited with the carrier something meant to help carry out the scheme to defraud.

Defendant's Initials           2

The elements of Count Seven are:

*First:*        the defendant transported, transmitted, or transferred, or caused to be transported, transmitted, or transferred, in interstate commerce property that was stolen, converted, or taken by fraud as described in the indictment;

*Second:*    the property had a value of at least $5,000; and

*Third:*      when the defendant transported the items the defendant knew that the property had been stolen, converted, or taken by fraud.

4.    <u>Counts Dismissed</u>

At the time of sentencing, the remaining counts against the defendant, Counts One through Three, Five and Six, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.    <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement.

6.    <u>Mandatory Restitution to Victims of Offenses of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the victim(s) for the items that are the subjects of the counts of conviction, as determined by the Court.

Defendant's Initials  _JL_            3

7.      Restitution to Victim of Offense of Conviction—Agreed Upon Amount

Pursuant to 18 U.S.C. §§ 3663(a)(3) and/or 3663A(a)(3), defendant agrees to make restitution to the victim(s) for the other items that are the subjects of the investigation that gave rise to this case, as determined by the Court.

8.      Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

9.      Chapter Two Specific Offense Characteristic – Loss – Joint
        Recommendation

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to jointly recommend to the Court that the defendant's Chapter Two Specific Offense Characteristic – Loss be calculated at greater than $65,000,000, for an increase of 24 levels pursuant to USSG § 2B1.1(b)(1)(M).  The parties understand that such a joint recommendation is not binding on the Court, and if not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw

Defendant's Initials _____JL_____                    4

from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

10.     Acceptance of Responsibility—Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials __JL__                5

11.    Cooperation—Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG § 5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance"

Defendant's Initials ___JL___                    6

has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

12.   Use of Information—Section 1B1.8

Pursuant to USSG § 1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG § 1B1.8(b).

13.   Cooperation—Responsibilities of Parties

a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or

Defendant's Initials ___JL___                    7

should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recission of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case,

Defendant's Initials  ⟨signature⟩                    8

pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

14.     <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, or defendant's nominees.

Defendant's Initials __ꓴ�<u>L</u>__                    9

The assets to be forfeited specifically include, but are not limited to, the following:

a.    An order of forfeiture in the amount of proceeds obtained from the fraud, which will be established at or before sentencing;

b.    <u>Assorted Jewelry and Watches</u>:

(1)   1.07 Carat G Color VVS2 Clarity Round Brilliant Cut Natural Diamond (Loose).

(2)   103.86 Carat D Color Internally Flawless Clarity Cushion Brilliant Cut Natural Diamond (Loose).

(3)   12.20 Carat Natural Fancy Yellow-Green VS2 Clarity Radiant Cut Diamond.

(4)   13.15 Carat Natural Fancy Vivid Pink VVS1 Emerald Cut Diamond in Platinum Solitaire Ring.

(5)   15.88 Carat Fancy Dark Gray Diamond.

(6)   19.46 Carat Natural Fancy Vivid Yellow Internally Flawless Radiant Cut Diamond. and Step Cut Half Moon Diamond Three Stone Ring by Kaufmann De Suisse in Platinum and 18 Karat Yellow Gold.

(7)   3.07 Carat Natural Fancy Intense Pink Internally Flawless Clarity Heart Modified Brilliant Cut Diamond.

(8)   30.38 Carat Natural No Heat Blue Sapphire Oval Shape and Round Brilliant Cut Diamond Three Stone Ring in 18 Karat White Gold by Alfardan.

(9)   33.34 Carat D Color Flawless Cushion Brilliant Cut Natural Diamond and Trilliant Cut Diamond Three Stone Ring by Graff in Platinum.

(10)  4.15 Carat E Color VVS2 Clarity Emerald Cut Natural Diamond (Loose).

(11)  4.27 Carat E Color VVS2 Clarity Emerald Cut Natural Diamond (Loose).

Defendant's Initials _JL_          10

(12)   46.51 Carat Natural Burma No Heat Blue Sapphire Cushion Cut and Triangular Step Cut Diamond Three Stone Ring in Platinum.

(13)   6.22 Carat H Color Internally Flawless Clarity Pear Brilliant Cut Natural Diamond (Loose).

(14)   6.40 Carat H Color Internally Flawless Clarity Pear Brilliant Cut Natural Diamond (Loose).

(15)   66.05 Carat Natural Fancy Intense Yellow VS1 Clarity Radiant Cut Diamond Solitaire Ring by Jacob & Co. in 18 Karat Yellow Gold.

(16)   7.03 Carat D Color Internally Flawless Clarity Oval Brilliant Cut Natural Diamond (Loose).

(17)   75.42 Carat Natural Fancy Intense Yellow SI1 Clarity Cushion Modified Brilliant Cut Diamond (Loose) from Disassembled Significant Multi White and Yellow Diamond and Platinum Necklace (Necklace/Metal Not Present).

(18)   Cartier Trinity Bracelet.

(19)   Chatila Diamond Double Halo Cocktail Ring Setting in Platinum and 18 Karat Yellow Gold (Missing Center Stone).

(20)   Chatila Diamond Halo Cocktail Ring Setting in Platinum and 18 Karat Yellow Gold (Missing Center Stone).

(21)   Chatila Multi Oval, Brilliant and Round Brilliant Cut Natural Diamond and White Gold Necklace.

(22)   Chopard Misbaha in 18 Karat White Gold, Sapphire, and Diamond.

(23)   Christophe Claret Rialto in White Gold with Sapphire Bezel (Piece Unique).

(24)   Diamond and Platinum Ring Setting Missing Center Stone.

Defendant's Initials  _JL_          11

(25) Disassembled Significant Multi Natural Diamond and Platinum Necklace by Graf- 138 Stones of Varying Carat Weights with Setting Separate.

(26) Epaulette Cut Natural Diamond Three Stone Ring Setting in Platinum (Missing Center Stone).

(27) Mellerio dits Meller Chevaux de Légende Rock Crystal, Gold, Diamond, Emerald, Malachite, Coral, Lapis Lazuli, Agate, and Obsidian Horse Sculpture.

(28) Multi Shape Natural Diamond and Platinum Halo Ring Setting (Missing Center Stone), 12 Stones of Varying Carat Weights.

(29) Multiple Loose Natural Diamonds from Disassembled Significant Multi White and Yellow Diamond and Platinum Necklace (Necklace/Metal Not Present), 203 Stones of Varying Carat Weights.

(30) Natural Ruby and Diamond Enhancer for Tiara or Necklace (Disassembled), Seven Stones of Varying Carat Weights.

(31) Lange & Sohne Tourbograph Perpetual "Pour le Merite" Watch.

(32) Audemars Piguet Platinum Royal Oak Watch with Grey Face.

(33) Audemars Piguet Royal Oak Watch with Gold Face.

(34) Audemars Piguet Royal Oak Watch with Purple Face.

(35) Patek Philippe Calatrava Watch.

(36) Patek Philippe Grey Gold Watch with Blue Face.

(37) Patek Philippe Nautilus Rose Gold and Ruby Bezel.

(38) Patek Philippe Nautilus Watch.

(39) Patek Philippe Platinum Watch with Emeralds.

(40) Patek Philippe Platinum Watch with Sapphires.

Defendant's Initials ⟋⟍⟍    12

(41)   Patek Philippe rose gold Watch with Black Face.

(42)   Patek Philippe Watch, Tiffany Blue Face.

(43)   Richard Mille RM65-01 Rose Gold Watch.

(44)   Rolex Day Date II "President" in Platinum with Original Maroon Dial Arabic Day/Date Wheels (Piece Unique).

(45)   Rolex Daytona in 18 Karat White Gold on Rubber Strap.

(46)   Rolex Daytona Rainbow Watch.

(47)   Rolex Eye of the Tiger Watch.

(48)   Rolex GMT-Master II "Pepsi" Rose Gold Watch.

(49)   Chopard Classic Watch.

(50)   Cartier Santos Dumont Watch.

c.   <u>Gold Bars</u>

(1)   Seven One-Kilogram Gold Bars.

(2)   Three One-Kilogram Gold Bars.

(3)   12 One-Kilogram Gold Bars.

d.   <u>Miscellaneous Items, Collectibles, and Figurines</u>

(1)   Rolex ID Cards, Socks, and Loose Watch Links.

(2)   Vacheron Constantin Traditionnelle World Time, 3 Piece Set.

(3)   Wilhelm Schimmel Grand Piano.

(4)   Cartier "Art Deco Chinese Prestige" Collection (3x Cartier Prestige Fountain Pens, 2x Cartier Lighter and 1x Desk/Travel Clock).

(5)   Cartier "Art Deco Chinese Prestige" Collection (2x Cartier Prestige Fountain Pens, 1x Cartier Lighter and 1x Desk/Travel Clock).

Defendant's Initials  _JL_                    13

(6)     Cartier "Colisee" Desk/Travel Clock.

(7)     Cartier "Secret Watch" Ball Point Pen (1322/2000).

(8)     Cartier "Secret Watch" Ball Point Pen (1115/2000).

(9)     Cartier Art Deco Chinese Prestige Pen, Prestige Dragon Pen, Cufflink and Ashtray Collection.

(10)    Cartier Exceptional Tiger Fountain Pen in Sterling Silver and Black Enamel with Crystal Display Tray and Cartier Logo Lines Lighter (046/100).

(11)    Cartier Exceptional Tiger Fountain Pen in Sterling Silver and Black Enamel with Crystal Display Tray and Cartier Logo Lines Lighter (058/100).

(12)    Cartier Exceptional Tiger Fountain Pens in Sterling Silver and Black Enamel with Crystal Display Tray and Cartier Logo Lines Lighter.

(13)    Cartier Pasha in Stainless Steel with Arabic Dial.

e.    <u>Vehicles</u>

(1)     1963 Chevrolet Corvette Sting Ray 2 Door Coupe with Split Window, VIN 30837S103339, Registered to Steven Parker Adams.

(2)     2007 Bentley Continental GT Convertible, VIN: SCBDR33W77C050110, Registered to John Lee.

(3)     2019 Mercedes-Benz GLS, VIN: 4JGDF6EE2KB222601, Registered to John Jace.

(4)     A 2020 Mercedes-Benz GLE, VIN: 4JGFB5KB1LA004052, registered to Steven Patrick Adams.

(5)     2021 Ford Mustang GT Coupe, VIN: 1FA6P8SJ7M5502318, Registered to Jonathan Joey Lee.

(6)     Any funds obtained from the sale of a 2022 Porsche 911 Convertible, VIN: WP0CD2A92NS260860, Registered to John Lee.

(7)    2022 Porsche Cayenne, VIN: WP1AA2AY8NDA07164,
Registered to John Lee.

which assets were either: 1) proceeds the defendant obtained from the mail fraud

scheme and/or interstate transportation of stolen property offense; or 2) purchased

with proceeds the defendant obtained from the mail fraud scheme and/or interstate

transportation of stolen property offense to which the defendant is to plead guilty.

      The net proceeds from the forfeiture and sale of any specific asset(s) will

be credited to and reduce the amount the United States shall be entitled to forfeit as

substitute assets pursuant to 21 U.S.C. § 853(p).

      The defendant acknowledges and agrees that (1) the defendant obtained

an amount of proceeds to be determined at or before sentencing as a result of the

commission of the offenses and (2) as a result of the acts and omissions of the

defendant, the proceeds not recovered by the United States through the forfeiture of

the directly traceable assets listed herein have been transferred to third parties and

cannot be located by the United States upon the exercise of due diligence.  Therefore,

the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is

entitled to forfeit any other property of the defendant (substitute assets), up to the

amount of proceeds the defendant obtained, as the result of the offenses of conviction

and, further, the defendant consents to, and agrees not to oppose, any motion for

substitute assets filed by the United States up to the amount of proceeds obtained

from commission of the offenses and consents to the entry of the forfeiture order into

the Treasury Offset Program.

Defendant's Initials _JL_           15

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture

Defendant's Initials __ ⌣∟ __                16

of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the

defendant agrees that the preliminary order of forfeiture will satisfy the notice

requirement and will be final as to the defendant at the time it is entered.  In the

event the forfeiture is omitted from the judgment, the defendant agrees that the

forfeiture order may be incorporated into the written judgment at any time pursuant

to Rule 36.

       The defendant agrees to take all steps necessary to identify and locate

all property subject to forfeiture (including substitute assets) and to transfer custody

of such property to the United States before the defendant's sentencing.  To that end,

the defendant agrees to make a full and complete disclosure of all assets over which

defendant exercises control, including all assets held by nominees, to execute any

documents requested by the United States to obtain from any other parties by lawful

means any records of assets owned by the defendant, and to consent to the release of

the defendant's tax returns for the previous five years.  The defendant agrees to be

interviewed by the government, prior to and after sentencing, regarding such assets

and their connection to criminal conduct.  The defendant further agrees to be

polygraphed on the issue of assets, if it is deemed necessary by the United States.

The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8

will not protect from forfeiture assets disclosed by the defendant as part of the

defendant's cooperation.

Defendant's Initials _____          17

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

Defendant's Initials _____        18

**B.**   **Standard Terms and Conditions**

   1.   Restitution, Special Assessment and Fine

   The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

   On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _J L_          19

2. <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials ⟋L̲    20

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

Defendant's Initials _JL_                     21

6.  <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.  <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States

Defendant's Initials _____                    22

Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

        8.   <u>Middle District of Florida</u>

        It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

        9.   <u>Filing of Agreement</u>

        This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

        10.   <u>Voluntariness</u>

        The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any

Defendant's Initials ___JL___          23

discussions between the attorney for the government and the defendant and

defendant's attorney and without promise of benefit of any kind (other than the

concessions contained herein), and without threats, force, intimidation, or coercion

of any kind.  The defendant further acknowledges defendant's understanding of the

nature of the offense or offenses to which defendant is pleading guilty and the

elements thereof, including the penalties provided by law, and defendant's complete

satisfaction with the representation and advice received from defendant's

undersigned counsel (if any).  The defendant also understands that defendant has the

right to plead not guilty or to persist in that plea if it has already been made, and that

defendant has the right to be tried by a jury with the assistance of counsel, the right

to confront and cross-examine the witnesses against defendant, the right against

compulsory self-incrimination, and the right to compulsory process for the

attendance of witnesses to testify in defendant's defense; but, by pleading guilty,

defendant waives or gives up those rights and there will be no trial.  The defendant

further understands that if defendant pleads guilty, the Court may ask defendant

questions about the offense or offenses to which defendant pleaded, and if defendant

answers those questions under oath, on the record, and in the presence of counsel (if

any), defendant's answers may later be used against defendant in a prosecution for

perjury or false statement.  The defendant also understands that defendant will be

adjudicated guilty of the offenses to which defendant has pleaded and, if any of such

Defendant's Initials _JL_                    24

offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

Beginning at least as early as in or about March 2019, and continuing through in or about August 2022, in the Middle District of Florida and elsewhere, the defendant, John Lee, held himself out as a master psychic and love and relationship advisor on various online platforms, including Purple Garden.

In or around April 2019, the defendant began communicating with M.S. in the online forum, Purple Garden.  After several months of communicating with M.S. through Purple Garden, the defendant exchanged contact information with M.S. and began corresponding via email, text messaging, and WhatsApp, rather than solely through the Purple Garden website.

During his conversations with M.S., the defendant provided M.S. with his Money Service Business 1 (MSB-1) account information, as well as his Financial

Defendant's Initials  J L                    25

Institution 1 (FI-1) account information for payment for his services. M.S. sent

money to the defendant's MSB-1 account, as well as directly to his FI-1 account.

In or around June 2022, the defendant directed M.S. to send him some of

M.S.'s personal belongings, including jewelry, to be cleansed. M.S. sent personal

effects to him in hope that he could cleanse the items of bad spirits. M.S. believed

that the defendant received the items and conducted the spiritual actions he promised

before he returned the items to M.S..

After M.S.'s jewelry was returned, M.S. continued to experience negative

feelings. The defendant convinced M.S. to send him jewelry belonging to M.S.'s

employer. M.S. agreed to send the defendant jewelry belonging to Victim 2.

M.S. removed the items of jewelry from a safe in the home of Victim 2 and

sent them via FedEx to the defendant. M.S. addressed the packages to "John Lee"

and sent them to "1070 Berry Lane, Davenport, Florida 33857" and to "50 Route

17th North, Paramus, Suite 135, New Jersey 07652."

Specifically, on or about July 6, 2022, M.S. entered Victim 2's safe and

removed items of jewelry. On or about July 18, 2022, M.S. sent an approximately

1.5-pound package from Doha, Qatar via FedEx International Priority. According

to the FedEx tracking details, this package was delivered to 1070 Berry Lane,

Davenport, Florida. The recipient's name on the package was "John Lee."

According to M.S., the package contained a Jacob & Co. 12.20 carat fancy-yellow

Defendant's Initials __JL__                    26

green VS2 clarity radiant cut diamond ring, as well as a Rolex Day Date II "President" watch, with serial number 79P296Z2.

Shortly thereafter, on July 21, 2022, M.S. sent another 1-pound package from Doha, Qatar via FedEx International Priority. According to the FedEx tracking details, this package was delivered to 1070 Berry Lane, Davenport, Florida. The recipient's name on the package was "John Lee." According to M.S., the package contained a 75.42 carat fancy intense yellow SI1 clarity rectangle cut diamond pendant necklace.

After receiving the above-described packages and others, the defendant approached jewelers and watch brokers in New York and New Jersey offering to sell and/or trade the valuable and rare pieces. One such dealer agreed to pay for and trade items in exchange for the 12.20 carat fancy-yellow green diamond ring, the Rolex watch, and the 75.42 carat fancy intense yellow diamond pendant necklace.

In or around mid-August, the defendant travelled from Davenport, Florida to Deal, New Jersey with the above-described jewelry and watch to sell and trade them to the dealer, who agreed to pay $850,000 for the diamond necklace, $156,000 for the diamond ring, and $130,000 for the Rolex watch. The dealer provided the defendant a sum of cash, as well as watches in exchange for the items.

The defendant failed to return any of the items to M.S. or Victim 2. After several failed attempts to retrieve the jewelry and watches from the defendant, M.S. told Victim 2 about the theft.

Defendant's Initials _JL_                    27

The following items were stolen directly from Victim 2 as a result of the mail fraud scheme:

(1)    1.07 Carat G Color VVS2 Clarity Round Brilliant Cut Natural Diamond (Loose).

(2)    103.86 Carat D Color Internally Flawless Clarity Cushion Brilliant Cut Natural Diamond (Loose).

(3)    12.20 Carat Natural Fancy Yellow-Green VS2 Clarity Radiant Cut Diamond.

(4)    13.15 Carat Natural Fancy Vivid Pink VVS1 Emerald Cut Diamond in Platinum Solitaire Ring.

(5)    15.88 Carat Fancy Dark Gray Diamond.

(6)    19.46 Carat Natural Fancy Vivid Yellow Internally Flawless Radiant Cut Diamond. and Step Cut Half Moon Diamond Three Stone Ring by Kaufmann De Suisse in Platinum and 18 Karat Yellow Gold.

(7)    3.07 Carat Natural Fancy Intense Pink Internally Flawless Clarity Heart Modified Brilliant Cut Diamond.

(8)    30.38 Carat Natural No Heat Blue Sapphire Oval Shape and Round Brilliant Cut Diamond Three Stone Ring in 18 Karat White Gold by Alfardan.

(9)    33.34 Carat D Color Flawless Cushion Brilliant Cut Natural Diamond and Trilliant Cut Diamond Three Stone Ring by Graff in Platinum.

(10)    4.15 Carat E Color VVS2 Clarity Emerald Cut Natural Diamond (Loose).

(11)    4.27 Carat E Color VVS2 Clarity Emerald Cut Natural Diamond (Loose).

(12)    46.51 Carat Natural Burma No Heat Blue Sapphire Cushion Cut and Triangular Step Cut Diamond Three Stone Ring in Platinum.

Defendant's Initials                 28

(13)   6.22 Carat H Color Internally Flawless Clarity Pear Brilliant Cut Natural Diamond (Loose).

(14)   6.40 Carat H Color Internally Flawless Clarity Pear Brilliant Cut Natural Diamond (Loose).

(15)   66.05 Carat Natural Fancy Intense Yellow VS1 Clarity Radiant Cut Diamond Solitaire Ring by Jacob & Co. in 18 Karat Yellow Gold.

(16)   7.03 Carat D Color Internally Flawless Clarity Oval Brilliant Cut Natural Diamond (Loose).

(17)   75.42 Carat Natural Fancy Intense Yellow SI1 Clarity Cushion Modified Brilliant Cut Diamond (Loose) from Disassembled Significant Multi White and Yellow Diamond and Platinum Necklace (Necklace/Metal Not Present).

(18)   Cartier Trinity Bracelet.

(19)   Chatila Diamond Double Halo Cocktail Ring Setting in Platinum and 18 Karat Yellow Gold (Missing Center Stone).

(20)   Chatila Diamond Halo Cocktail Ring Setting in Platinum and 18 Karat Yellow Gold (Missing Center Stone).

(21)   Chatila Multi Oval, Brilliant and Round Brilliant Cut Natural Diamond and White Gold Necklace.

(22)   Chopard Misbaha in 18 Karat White Gold, Sapphire, and Diamond.

(23)   Christophe Claret Rialto in White Gold with Sapphire Bezel (Piece Unique).

(24)   Diamond and Platinum Ring Setting Missing Center Stone.

(25)   Disassembled Significant Multi Natural Diamond and Platinum Necklace by Graf- 138 Stones of Varying Carat Weights with Setting Separate.

(26)   Epaulette Cut Natural Diamond Three Stone Ring Setting in Platinum (Missing Center Stone).

Defendant's Initials                     29

(27)    Mellerio dits Meller Chevaux de Légende Rock Crystal, Gold, Diamond, Emerald, Malachite, Coral, Lapis Lazuli, Agate, and Obsidian Horse Sculpture.

(28)    Multi Shape Natural Diamond and Platinum Halo Ring Setting (Missing Center Stone), 12 Stones of Varying Carat Weights.

(29)    Multiple Loose Natural Diamonds from Disassembled Significant Multi White and Yellow Diamond and Platinum Necklace (Necklace/Metal Not Present), 203 Stones of Varying Carat Weights.

(30)    Natural Ruby and Diamond Enhancer for Tiara or Necklace (Disassembled), Seven Stones of Varying Carat Weights.

(31)    Lange & Sohne Tourbograph Perpetual "Pour le Merite" Watch

(32)    Rolex Day Date II "President" in Platinum with Original Maroon Dial Arabic Day/Date Wheels (Piece Unique).

(33)    Cartier Santos Dumont Watch.

(34)    Vacheron Constantin Traditionnelle World Time, 3 Piece Set.

(35)    Cartier "Art Deco Chinese Prestige" Collection (3x Cartier Prestige Fountain Pens, 2x Cartier Lighter and 1x Desk/Travel Clock).

(36)    Cartier "Art Deco Chinese Prestige" Collection (2x Cartier Prestige Fountain Pens, 1x Cartier Lighter and 1x Desk/Travel Clock).

(37)    Cartier "Colisee" Desk/Travel Clock.

(38)    Cartier "Secret Watch" Ball Point Pen (1322/2000).

(39)    Cartier "Secret Watch" Ball Point Pen (1115/2000).

(40)    Cartier Art Deco Chinese Prestige Pen, Prestige Dragon Pen, Cufflink and Ashtray Collection.

Defendant's Initials _JL_                    30

(41)    Cartier Exceptional Tiger Fountain Pen in Sterling Silver and Black Enamel with Crystal Display Tray and Cartier Logo Lines Lighter (046/100).

(42)    Cartier Exceptional Tiger Fountain Pen in Sterling Silver and Black Enamel with Crystal Display Tray and Cartier Logo Lines Lighter (058/100).

(43)    Cartier Exceptional Tiger Fountain Pens in Sterling Silver and Black Enamel with Crystal Display Tray and Cartier Logo Lines Lighter.

(44)    Cartier Pasha in Stainless Steel with Arabic Dial

Lee received the following items as his payment when he sold items, which had been stolen from Victim 2 and transported across state lines, to others:

(1)    Audemars Piguet Platinum Royal Oak Watch with Grey Face.

(2)    Audemars Piguet Royal Oak Watch with Gold Face.

(3)    Audemars Piguet Royal Oak Watch with Purple Face.

(4)    Patek Philippe Calatrava Watch.

(5)    Patek Philippe Grey Gold Watch with Blue Face.

(6)    Patek Philippe Nautilus Rose Gold and Ruby Bezel.

(7)    Patek Philippe Nautilus Watch.

(8)    Patek Philippe Platinum Watch with Emeralds.

(9)    Patek Philippe Platinum Watch with Sapphires.

(10)    Patek Philippe Rose Gold Watch with Black Face.

(11)    Patek Philippe Watch, Tiffany Blue Face.

(12)    Richard Mille RM65-01 Rose Gold Watch.

Defendant's Initials _JL_        31

(13)   Rolex Daytona in 18 Karat White Gold on Rubber Strap.

(14)   Rolex Daytona Rainbow Watch.

(15)   Rolex Eye of the Tiger Watch.

(16)   Rolex GMT-Master II "Pepsi" Rose Gold Watch.

(17)   Chopard Classic Watch.

(18)   Seven One-Kilogram Gold Bars.

(19)   Three One-Kilogram Gold Bars.

(20)   12 One-Kilogram Gold Bars.

(21)   Rolex ID Cards, Socks, and Loose Watch Links

The following items were purchased by Lee using proceeds he obtained from the mail fraud scheme and interstate transportation of stolen property:

(1)   Wilhelm Schimmel Grand Piano.

(2)   1963 Chevrolet Corvette Sting Ray 2 Door Coupe with Split Window, VIN 30837S103339, Registered to Steven Parker Adams.

(3)   2007 Bentley Continental GT Convertible, VIN: SCBDR33W77C050110, Registered to John Lee.

(4)   2019 Mercedes-Benz GLS, VIN: 4JGDF6EE2KB222601, Registered to John Jace.

(5)   2020 Mercedes-Benz GLE, VIN: 4JGFB5KB1LA004052, registered to Steven Patrick Adams.

(6)   2021 Ford Mustang GT Coupe, VIN: 1FA6P8SJ7M5502318, Registered to Jonathan Joey Lee.

(7)   Any funds obtained from the sale of a 2022 Porsche 911 Convertible, VIN: WP0CD2A92NS260860, Registered to John Lee.

Defendant's Initials __JL__                    32

      (8)    2022 Porsche Cayenne, VIN: WP1AA2AY8NDA07164, Registered to John Lee.

12.    <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.    <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this **6th** day of November, 2023.

ROGER B. HANDBERG
United States Attorney

_____
John Lee
Defendant

_____
Tiffany E. Fields
Assistant United States Attorney

_____
Bjorn Brunvand, Esq.
Attorney for Defendant

_____
Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section

Defendant's Initials __JL__      33