UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                    CASE NO. 8:22-cr-437-WFJ-SPF

JOHN LEE

**JOINT SENTENCING MEMORANDUM**

The United States and the defendant, John Lee, through undersigned counsel, Bjorn Brunvand, respectfully submit this joint sentencing memorandum to discuss certain points presented by this Court. Doc. 48. In response, the parties submit the following:

**I.     Pertinent Procedural Background**

John Lee was arrested by criminal complaint on November 22, 2022. Docs. 1 and 4. On December 21, 2022, a grand jury returned an indictment charging Mr. Lee with four counts of mail fraud and three counts of interstate transportation of stolen property. Doc. 15.  In May 2023, the United States filed an unopposed motion to take a videotaped deposition of a material witness for use at trial pursuant to Federal Rule of Criminal Procedure 15. Doc. 30.  This Court granted the United States' motion. Doc. 31.  In August 2023, the videotaped Rule 15 deposition of the material witness was taken in Doha, Qatar.  On November 13, 2023, Mr. Lee entered a guilty plea to one count of mail fraud and one count of interstate transportation of stolen property. Docs. 36 and 39.  This Court accepted Mr. Lee's guilty plea and a

presentence report (PSR) was completed. Docs. 44 and 46. Sentencing was set for March 4, 2024. Doc. 44. On February 13, 2024, this Court ordered the parties to discuss certain points in a brief sentencing memorandum. Doc. 48.

## II.   Pertinent Factual Background

From at least as early as June 2022, and continuing through in or about August 2022, defendant John Lee, through false and fraudulent pretenses, representations, and promises, convinced M.S.—formerly referred to as Victim 1—to mail approximately $90 million worth of jewelry belonging to Victim 2 to him at addresses in Davenport, Florida and Paramus, New Jersey.

For several years, Mr. Lee advertised himself as a psychic and love and relationship advisor on various websites, such as www.purplegarden.com ("Purple Garden").[1] Mr. Lee provided love and relationship advice to M.S. for almost four years. Between August 2018 and August 2022, M.S. made approximately 498 payments totaling approximately $43,542.61 to Purple Garden through PayPal.

In addition to the Purple Garden private chat spaces, in approximately December 2019, Mr. Lee began communicating with M.S. through email, text messaging, phone calls, and WhatsApp. During M.S.'s and Mr. Lee's communications outside of the Purple Garden chat spaces, Mr. Lee provided M.S. with his PayPal information, as well as his account information at SunTrust Bank

---

[1] Purple Garden is a website that allows customers to communicate with psychic advisors. Customers pay the psychic advisor based on the amount of time they communicate in the Purple Garden private chat spaces. The psychic advisors provide a range of services to customers, including mediumship, tarot card readings, and love and career advice.

(now known as Truist Bank). Between December 2019 and May 2022, M.S. directly sent Mr. Lee approximately $31,980 via his PayPal account. In addition, between January 2020 and August 2022, M.S. paid Mr. Lee approximately $51,190.23 via wire transfers to one of his Truist Bank accounts.

During these conversations, Mr. Lee convinced M.S. to mail packages of diamonds and precious gemstones to him via a commercial mail carrier. Specifically, in or around June 2022, Mr. Lee directed M.S. to send him some of M.S.'s personal jewelry to be cleansed. M.S. sent the jewelry to him in the hope that he could cleanse the jewelry of bad spirits. M.S. believed Mr. Lee received M.S.'s jewelry and conducted the spiritual actions he promised, before he returned the jewelry to M.S. However, after M.S.'s jewelry was returned, M.S. continued to experience negative feelings and continued communicating with Mr. Lee.

Through false and fraudulent pretenses, representations, and promises, including that certain items would be returned, Mr. Lee then convinced M.S. to send him jewelry belonging to Victim 2. Believing the items would be returned, in whole or in part, M.S. agreed to send the defendant jewelry belonging to Victim 2. M.S. removed the items of jewelry from a safe in the home of Victim 2 in Qatar and sent them via FedEx to the defendant. M.S. addressed the packages to "John Lee" and sent some to "50 Route 17th North, Paramus, Suite 135, New Jersey 07652" and others to "1070 Berry Lane, Davenport, Florida 33857." Thereafter, the items sent to this district were transported across state lines, where they were sold to other persons for Mr. Lee's enrichment and the enrichment of his family members.

### III. Point One: The enhancement at USSG § 2B1.1(b)(10) only applies when a substantial part of the scheme to defraud is committed from outside the United States.

The Eleventh Circuit has recognized that case law pertaining to an enhancement under USSG § 2B1.1(b)(10) is sparse. *See United States v. Singh,* 291 F.3d 756 (11th Cir. 2002) ("neither this Court nor any other court of which we are aware has analyzed or determined the meaning or scope of the phrase 'committed from outside of the United States' as it is used in subsection (B)"); *United States v. De Aguiar,* 453 Fed. Appx. 927 (11th Cir. 2012) ("Our only previous discussion of the level enhancement at issue in this case was in *United States v. Singh*, 291 F.3d 756 (11th Cir.2002)"). In *Singh,* the court adopted the plain meaning of the phrase "committed from outside of the United States" and found that the scheme does not have to originate outside of the United States, nor does the defendant have to personally take action from outside of the United States for the enhancement to apply. *Id.* at 761.

In *De Aguiar,* the Eleventh Circuit acknowledged that the Sentencing Guidelines do not define "substantial," and that no court has "had occasion to consider the precise definition." *Id.* at 928. The court observed that in this circumstance, "language in the Sentencing Guidelines is to be given its plain and ordinary meaning. Further, where the guidelines provide no indication as to a particular application the Court looks to the language and purpose of the Sentencing Guidelines for instruction." *Id.* Further, the court considered the facts and

circumstances in *Singh,* and reasoned that two of the most important acts of the crime occurred in Brazil. Because "…parts of the beginning, middle, and end of Aguiar's scheme took place outside of the United States," the Eleventh Circuit determined that the upward adjustment should be applied. *Id.* at 929.

      Here, Mr. Lee was within the United States when he developed the scheme to defraud. Mr. Lee was in the United States when he communicated with M.S. over a period of four years. Mr. Lee was also within the United States when he continued to request M.S. to send packages of jewelry. While it is true that M.S., while in Qatar, removed tens of millions of dollars' worth of jewelry from a safe belonging to M.S.'s employer and mailed the items to Mr. Lee, the removal of jewelry and mailing of the same are the only acts that occurred outside of the United States. Once the items were received by Mr. Lee in the United States, he travelled from Florida to New York and New Jersey to dispose of the items for substantial benefits in currency, gold bars, other jewelry, and watches. Mr. Lee's ill-gotten gains were then used for his benefit and the benefit of others all within the United States. For example, Mr. Lee purchased vehicles and a piano, and he gave cash and gold bars to his children. Applying the court's logic in *De Aguiar's* analysis of *Singh,* the beginning, a portion of the middle, and the end of Mr. Lee's mail fraud scheme occurred within the United States. Though an essential piece of the crime occurred outside of the United States, the substantial portion of the crime occurred domestically. Accordingly, the parties do not believe the enhancement in USSG § 2B1.1(b)(10) applies in this case.

5

**IV.    Point Two: There was not an abuse of private trust or a special skill as defined in USSG § 3B1.3.**

    a. <u>Abuse of private trust</u>

The Guidelines define a position of a public or private trust as follows:

a position of public or private trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult).

USSG §3B1.3, cmt. (n.1).

Note three to the commentary provides further guidance:

[t]his adjustment also applies in a case in which the defendant provides sufficient indicia to the victim that the defendant legitimately holds a position of private or public trust when, in fact, the defendant does not…In making the misrepresentation, the defendant assumes a position of trust, relative to the victim, that provides the defendant with the same opportunity to commit a difficult-to-detect crime that the defendant would have had if the position were held legitimately.

*Id.* at n.3.

While not controlling, the Eleventh Circuit has often relied on *United States v. Koehn,* 74 F.3d 199 (10th Cir. 1996), when determining whether an enhancement under § 3B1.3 is applicable. *See United States v. Garrison,* 133 F.3d 831 at 838 (11th Cir. 1998); *United States v. Linville,* 228 F.3d 1330 at 1331 (11th Cir. 2000); *United States v. Morris,* 286 F.3d 1291 at 1297 (11th Cir. 2002). In *Koehn,* the Tenth Circuit found that when determining whether USSG § 3B1.3 applies in a fiduciary or trust

6

situation, courts should "carefully distinguish between those arms-length commercial relationships where trust is created by the defendant's personality or the victim's credulity, and relationships in which the victim's trust is based on defendant's position in the transaction. Only in the latter does defendant's position enable him to commit or conceal the fraud, or significantly facilitate the offense." *Id.* at 201.

In *Morris,* the Eleventh Circuit made note that the Sentencing Guidelines lack "a clear definition of what constitutes a position of trust" and, thus, "the determination of whether to apply the enhancement is highly dependent on the specific facts in each situation." *Id.* at 1296-1297.  The court further stated, "Although we do not require the relationship to satisfy the legal definition of a fiduciary, *United States v. Kummer*, 89 F.3d 1536, 1547 (11th Cir. 1996), we have stated that the 'guideline enhancement requires more than a mere showing that the victim had confidence in the defendant. Something more akin to a fiduciary function is required.' *United States v. Garrison*, 133 F.3d 831, 838 (11th Cir. 1998) (quoting *United States v. Brunson*, 54 F.3d 673, 678 (10th Cir.1995))." *Id.* at 1299.

The position of spiritual trust has been touched upon in *United States v. Hall,* 349 F.3d 1320 (11th Cir. 2003), when the Eleventh Circuit found a two-level enhancement under USSG § 3B1.3 was applied in error.  Defendant Hall was a pastor of a church and the head of the church's missions program.  In this position, Hall and others held "roadshow" meetings to promote a "giftor" / "giftback" program, in which those that gave financial gifts would receive double their money in return. *Id.* at 1322.  Hall and others claimed the gifts were for charitable purposes;

7

however, Hall received more than $539,000 of the "gifted" funds. Hall was found guilty at trial. The district court applied a two-level enhancement for abuse of position of trust at sentencing. *Id.* at 1323-1324. The Eleventh Circuit found that "Although Hall may have used his status as a pastor to develop the trust of investors, this does not demonstrate that Hall created a personal trust relationship with any of the victims." *Id.* at 1325. Further, during trial, all of victims testified that they went to the roadshows, not for spiritual guidance, "but to invest money, not because Hall was a pastor, but because they wanted to 'double their money." *Id.*

    Here, Mr. Lee held himself out to be a "master advisor" and "spiritual;" however, Mr. Lee never claimed to be a member of the clergy, to have special training, or to hold any certifications. Mr. Lee met M.S. on a psychic website, and M.S. paid Mr. Lee for his services as an online love and relationship advisor. Mr. Lee, in this instance, was engaged in a commercial relationship with M.S. It is undisputed that Mr. Lee gained M.S.'s trust during the cultivation of the relationship, whether by his personality, M.S.'s credulity, or a combination of both. However, M.S.'s confidence in Mr. Lee's ability to advise M.S. in romantic endeavors did not place Mr. Lee in a legal or ethical relationship of trust with M.S. Otherwise stated, as carried out by Mr. Lee, the role of an online psychic, love, and/or relationship advisor, was commercial in nature and not a fiduciary role.

      b.  <u>Use of a special skill</u>

A special skill is one that is "not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." USSG §3B1.3, cmt. (n.4).

In *United States v. Campa,* 529 F.3d 980 at 1017 (11th Cir. 2008), the court wrote:

> Courts have held that "[t]he skill must be a 'legitimate' skill turned to evil purposes." See Roger W. Haines, Jr. et al., *Federal Sentencing Guidelines Handbook* 1079 (2007) (footnote omitted). The Ninth Circuit, for example, has held that "[s]tanding alone, [a defendant's] ability to manufacture methamphetamine cannot be the basis of a special skill enhancement." *United States v. Mainard,* 5 F.3d 404, 405 (9th Cir. 1993). The District of Columbia Circuit followed similar reasoning when it held that proof that the defendant "knew how to commit the base offense of manufacturing PCP" was "insufficient to justify a special skill enhancement under § 3B1.3." *United States v. Young,* 932 F.2d 1510, 1515 (D.C. Cir. 1991).

Particularly on point, the court in *Young* wrote, "Nothing in the commentary suggests that § 3B1.3 applies to a criminal who…bones up on the tricks of his trade and becomes adept at committing a crime that the general public does not know how to commit." *Young,* 932 F.2d 1510 at 1515.

Mr. Lee's trade was centered, in part, upon his ability to convince clients that he could guide them in romantic pursuits. His trade did not require substantial education, training, or licensing. Rather, Mr. Lee's trade required him to be charismatic, a good listener, and to convince good-paying clients to call back. In so

9

doing, during recorded conversations, Mr. Lee made the following representations to M.S.:

- he was powerful,
- he was M.S.'s guardian angel,
- he would not let anything happen to M.S.,
- he would make sure what comes around goes around,
- he knew, and could feel, M.S.'s energy,
- he was a superior psychic spiritualist and M.S.'s personal advisor, and
- he could drain negative energy.

These statements and others were not representations made based on training and expertise, or a legitimate skill turned to an evil purpose. Rather, through years of working as an online spiritualist and love and relationship advisor, Mr. Lee became adept at grooming vulnerable individuals to speak with him repeatedly. In other words, Mr. Lee "boned up" on the tricks of his trade to convince M.S. to continuously contact him, pay him, provide him gifts and ultimately, send him Victim 2's jewelry and watches. Nevertheless, the tricks of Mr. Lee's trade are not a special skill.

### V.     Point Three: The defendant was not a leader or manager of criminal activity per USSG § 3B1.1(c).

USSG Section 3B1.1 calls for an enhancement in a defendant's base offense level if he was an organizer, leader, manager, or supervisor of the offense. The government must prove the existence of an aggravating role by a preponderance of the evidence. *United States v. Mangano*, 749 Fed. Appx. 910, 912 (11th Cir. 2018); *United States v. Alred*, 144 F.3d 1405, 1421 (11th Cir. 1998). Under section 3B1.1(a), a district court may increase a defendant's offense level by two levels if the defendant

was "an organizer, leader, manager, or supervisor in any criminal activity." USSG § 3B1.1(c). "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." USSG § 3B1.1, cmt. n.2. Thus, there are two distinct ways for a defendant to qualify for this two-level enhancement—one hinges on whether there was another participant, the other on his responsibilities within a criminal organization.

      A participant in an offense is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG §3B1.1, cmt. n.1. "In *United States v. Tai,* we recognized mere unknowing facilitators of crime are not criminally responsible participants under § 3B1.1. 41 F.3d 1170, 1174 (7th Cir.1994); see also *United States v. Saulter*, 60 F.3d 270, 281 (7th Cir.1995)." *United States v. Hall*, 101 F.3d 1174, 1178 (7th Cir. 1996).

      Here, M.S.'s role in the offense must be considered. M.S. believed that the items she mailed to Mr. Lee would be returned, in whole or in part. M.S. acted as an unknowing facilitator of this crime. An unknowing facilitator is not a "participant" for purposes of this enhancement.

      The second analysis for a role adjustment under USSG 3B1.1(c) considers Mr. Lee's role within a criminal organization. Here, there is no evidence to suggest that

11

Mr. Lee exercised control over property, assets, or activities of a criminal organization. Rather, Mr. Lee orchestrated this scheme himself, and he exercised control over stolen watches and jewelry, as well as the ill-gotten gains from the sale of those items.  He did so for his own personal benefit.  Any financial benefit to others, primarily his children, was conveyed upon them by Mr. Lee without regard of their participation, or lack thereof, in his scheme.

## VI. Point Four: M.S. has been arrested in Doha, Qatar.

M.S. has been formally charged with violating multiple statutes in Doha, Qatar, including theft, sorcery, and false custom declaration.  The case has been referred to the court, and proceedings are ongoing.

In October 2023, the Qatari Public Prosecutor, Director of the Criminal Affairs Administration, conducted a cooperator's interview of Mr. Lee via video teleconference.  This interview was the first of its kind, and Mr. Lee truthfully answered questions posed by the Qatari Public Prosecutor about M.S.'s involvement in Mr. Lee's scheme as well as items stolen from Victim 2.

## VII. Conclusion

In considering the points presented in this joint sentencing memorandum, the Court should find that enhancements under USSG § 2B1.1(b)(10) and USSG §3B1.3 are not applicable in this case.

        Respectfully submitted,

        ROGER B. HANDBERG
        United States Attorney

By: */s/ Tiffany E. Fields*
     Tiffany E. Fields
     Assistant United States Attorney
     AR Bar 2012221
     400 North Tampa Street, Suite 3200
     Tampa, Florida 33602
     Telephone: (813) 274-6000
     E-Mail: Tiffany.Fields2@usdoj.gov

     */s/ Rachelle DesVaux Bedke*
     Rachelle DesVaux Bedke
     Assistant United States Attorney
     Chief, Economic Crimes Section

     On behalf of John Lee,

     */s/ Bjorn E. Brunvand*
     Bjorn E. Brunvand, Esq.
     Counsel for the Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Bjorn E. Brunvand, Esquire

                                        /s/ *Tiffany E. Fields*
                                        Tiffany E. Fields
                                        Assistant United States Attorney
                                        Arkansas Bar No. 2012221
                                        400 N. Tampa St., Ste. 3200
                                        Tampa, FL 33602-4798
                                        Telephone: (813) 274-6000
                                        Facsimile: (813) 274-6358
                                        E-mail: Tiffany.Fields2@usdoj.gov