UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          Case No. 8:22-cr-437-WFJ-SPF

JOHN LEE
  a/k/a "Giovanni"

**UNITED STATES' MOTION TO DISMISS
AND/OR STRIKE PETITIONERS' VERIFIED CLAIM**

The United States of America moves, pursuant to Federal Rule of Criminal

Procedure 32.2(c)(1)(A) and 21 U.S.C. § 853(n)(2), to dismiss and/or strike the

verified petition filed by Lombard Mutual LLC, Wolf Grunberg Corp., Rosalie

Grunberg, and Joseph Grunberg  (collectively, the "Petitioners") because they do not

hold a legal interest in the 103.86 Carat D Color Internally Flawless Clarity Cushion

Brilliant Cut Natural Diamond  (the "Diamond") and therefore lack standing to

contest its forfeiture. Additionally, the United States moves to dismiss and/or strike

the verified petition because it does not comply with 21 U.S.C. § 853(n)(3)'s  pleading

requirements and thus fails to state a claim for relief. In support, the United States

submits the following memorandum of law.

**MEMORANDUM OF LAW**

**I.    Procedural History**

1.       On November 13, 2023, Defendant, pursuant to a plea agreement with

the United States, pleaded guilty to Counts Four and Seven of the Indictment. Doc.

39. Count Four charged Defendant with mail fraud in violation of 18 U.S.C. § 1341.

Doc. 15. Count Seven charged Defendant with interstate transportation of stolen property in violation of 18 U.S.C. § 2314. *Id.*

2.      In his plea agreement, Defendant agreed that, as part of his mail fraud scheme, he caused M.S. to mail jewelry and watches to Defendant, and promised M.S. that he would return the valuables after completing spiritual actions on them. Doc. 36. The jewelry and watches belonged to M.S.'s employer (the "Victim"), who did not know that M.S. removed the items from his home. *Id.* However, Defendant never returned the jewelry and watches to M.S. *Id.* Instead, Defendant approached jewelers and watch brokers in New York and New Jersey and sold and traded the stolen property. *Id.* Defendant received watches and gold bars as payment for the stolen property he sold. *Id.* He also purchased other assets using fraud proceeds, including luxury vehicles and a grand piano. *Id.*

3.      This Court accepted Defendant's plea and adjudicated him guilty. Doc. 44. Defendant's sentencing is scheduled for May 10, 2024. Doc. 72.

4.      On February 13, 2024, the Court entered a preliminary order of forfeiture[1] as to the stolen property, the property received from the sale of stolen property, and the property purchased with the fraud proceeds (collectively referred to below as the "Subject Assets"). Doc. 47.

---

[1] The United States has moved to amend the order to include a 15.88 Carat Fancy Dark Gray Diamond and a 15.25 Carat Burma No Heat Cushion Cut Ruby. *See* Doc. 73. Petitioners do not claim an interest in either stone, so an amended order of forfeiture will not impact them.

5.      During its investigation, the FBI determined that the Diamond was stolen from the Victim by Defendant as part of his mail fraud scheme. On November 23, 2022, the Diamond was surrendered to the FBI. The expert retained by the FBI to examine the Diamond estimated its fair market value to be $17.25 million.

6.      The Diamond is one of the Subject Assets included in the preliminary order of forfeiture because it was stolen from the Victim.[2] Doc. 45.

7.      On or about March 26, 2024, after receiving direct notice of forfeiture, the Petitioners filed a verified petition asserting that, in the summer of 2022, they agreed to loan a "Trusted Counterparty" $4 million against the Diamond, which they would hold as collateral (the "Loan Agreement"). Doc. 64. In prior communications with the undersigned, the Petitioners' counsel identified the Trusted Counterparty as Solomon Moyal of Ronsol Enterprises, a New Jersey jeweler.[3]

_____

[2] The United States will not  seek a final order of forfeiture for the jewelry stolen from the Victim. Instead, it seeks to: (1) extinguish any ownership claim the defendant may assert by obtaining a preliminary order of forfeiture; and (2) return the stolen property to the rightful owner. As discussed below, the United States asserts that title to the Diamond never passed to the Defendant and therefore, he could not pass good title to any subsequent purchasers. Accordingly, the United States did not ask the Victim to incur the expense of filing a petition of ownership under section 853(n)(1)(A). Nothing about this motion is intended to suggest that Petitioners may not also qualify as victims of the Defendant's fraud. However, if the Court allows Petitioners to be heard in the ancillary proceeding, *i.e.*, determines they have a legal interest in the Diamond, the United States will provide the Victim with a copy of the Court's order and request that the Victim file a petition to litigate his ownership interest.

[3] In stark contrast to Petitioners' version of events, Moyal, through counsel, has advised the United States that he (Moyal) *sold* the Diamond to Grunberg. Regardless of whether the Diamond was loaned or sold, for the reasons set forth in this motion,

8.      The Petitioners state that, on or about September 14, 2022, in a series of advances under the Loan Agreement, the Petitioners loaned the "Trusted Counterparty" $2.8 million, and accepted the Diamond as collateral. Doc. 64. The $2.8 million advance allegedly consisted of $800,000 in wires and cash equivalents, and family gold and jewelry valued at approximately $2 million. *Id.*

9.      The Petitioners contest forfeiture of the Diamond on the basis that they are bona fide purchasers under 21 U.S.C. § 853(n)(6)(B). Doc. 64. Specifically, they allege that they held a security interest in the Diamond, which was perfected under New York law when they took possession of the Diamond. *Id.*

10.     Petitioners allege that, at the time of the loan and when they took possession of the Diamond, they were reasonably without knowledge to believe the Diamond was involved in any violation of the law or was subject to forfeiture. *Id.*

## II.  **Legal Argument**

### A.  **Overview of Criminal Ancillary Proceeding**

The ancillary forfeiture proceeding is governed by 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2. *See United States v. Davenport*, 668 F.3d 1316, 1320 (11th Cir. 2012). The only issue in an ancillary proceeding is ownership of the property ordered forfeited in the criminal case. *United States v. Gilbert*, 244 F.3d 888, 911 (11th Cir. 2001). The ancillary proceeding provides a

---

the Petitioners do not have a legal interest in the Diamond sufficient to challenge forfeiture.

procedure where third parties who claim their property interests have been forfeited may challenge the validity of the forfeiture order and establish their legitimate ownership interest. *See United States v. Marion*, 562 F.3d 1330, 1336 (11th Cir. 2009). The third-party petitioner must file a verified claim for a hearing to adjudicate the validity of the alleged interest. 21 U.S.C. § 853(n)(2).

Ultimately, a petitioner must establish by a preponderance of the evidence that he either has a superior interest in the forfeited property at the time the government's interest vested through the commission of the act giving rise to the forfeiture, or is a bona fide purchaser reasonably without cause to believe the property is subject to forfeiture. *See* 21 U.S.C. § 853(n)(6); *United States v. Watkins,* 320 F.3d 1279, 1282 (11th Cir. 2003). To prevail as a bona fide purchaser, a petitioner must establish: (1) a legal right, title, or interest in the forfeited property; (2) that he was a bona fide purchaser for value of the right, title, or interest in the forfeited property; and (3) that he was, at the time of purchase, reasonably without cause to believe that the property was subject to forfeiture. *See United States v. Soreide*, No. 03-60235-CR-COHN/SNOW, 2005 WL 8137780, at *6 (S.D. Fla. Mar. 23, 2005) (citing *U.S. v. Lavin*, 942 F.2d 177, 179 (3d Cir. 1991)). A third-party petitioner bears the burden of proof in the ancillary proceeding. *Gilbert*, 244 F.3d at 911.

## B.   Pleading Requirements

Section 853(n)(3) sets forth the pleading requirements for third-party petitions in ancillary forfeiture proceedings. Under this statute, a petition must (1) be signed

under penalty of perjury; (2) set forth the nature and extent of the petitioner's right, title, or interest in the property; (3) explain the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property; and (4) establish any additional facts supporting the petitioner's alleged claim. 21 U.S.C. § 853(n)(3). Federal courts require strict compliance with these pleading requirements. *United States v. Avila-Torres*, Case No. 17-20148-Cr-Scola, 2019 WL 2177342, at *4 (S.D. Fla. May 20, 2019). Indeed, it is "vital" to apply these pleading standards "in light of the substantial risk of false claims historically associated with forfeiture proceedings." *United States v. Yu*, Case No. 6:16-CR-0023-ORL-37GJK, 2016 WL 4803195, at *1 (M.D. Fla. Sept. 13, 2016).

C.    **Standing Requirement**

To contest the forfeiture of property, a petitioner must first demonstrate that he has both Article III and statutory standing. *Via Mat Int'l S. Am. Ltd. v. United States*, 446 F.3d 1258, 1262-63 (11th Cir. 2006); *United States v. $38,000.00 in United States Currency*, 816 F.2d 1538, 1543, 1545 (11th Cir. 1987). Under 21 U.S.C. § 853(n)(2), only those asserting "a ***legal interest*** in property which has been ordered forfeited to the United States" may petition the court for a hearing in an ancillary proceeding to adjudicate the validity of the alleged interest. 21 U.S.C. § 853(n)(2) (emphasis added); *see Stettin v. U.S.*, No. 12-62193-CIV, 2013 WL 4028150, at *5 (S.D. Fla. Aug. 7, 2013) (standing requirement for third-party petitioners found in § 853(n)(2)). Accordingly, the court must first determine whether the third-party

6

petitioner has a legally sufficient interest in the forfeited property to give the petitioner standing to contest the forfeiture. *See United States v. Weiss*, 467 F.3d 1300, 1307-08 (11th Cir. 2006); *United States v. Morales,* 36 F. Supp. 3d 1276, 1284 (M.D. Fla. 2014). Courts must look to state law to determine whether a petitioner has a legal interest in forfeited property. *See U.S. v. Kennedy*, 201 F.3d 1324, 1334 (11th Cir. 2000).

### D.   Legal Standard for Motion to Dismiss and/or Strike Verified Petition

In an ancillary proceeding, a court may, on motion, dismiss a third-party petition "for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). Such a motion should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). *See Marion*, 562 F.3d at 1342. As such, the facts set forth in a petitioner's claim are assumed to be true, and the scope of review is limited to the four corners of the claim. *See St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). A court may dismiss any third-party petition that fails to meet the pleading requirements of 21 U.S.C. § 853(n)(3) without holding a hearing. *United States v. Hassan*, 411 F. Supp. 3d 1302, 1307 (M.D. Fla. Nov. 26, 2019); *United States v. Lima*, No. 8:09-cr-377-T-17TBM, 2011 WL 5525339, at *2 (M.D. Fla. Oct. 9, 2011).

As the ancillary proceeding is civil in nature, the Federal Rules of Civil Procedure apply. *See United States v. Amodeo*, 916 F.3d 967, 972 (11th Cir. 2019); *Davenport*, 668 F.3d at 1322. Thus, a court also has discretion to strike deficient

7

claims pursuant to Federal Rule of Civil Procedure 12(f). *See United States v. King*,

No. 3:06-CR-212-J-33MCR, 2009 WL 2525560, at *2 (M.D. Fla. Aug. 17, 2009).

### E.   Petitioners Do Not Have Standing to Contest the Forfeiture of the Diamond.

The petition should be dismissed and/or stricken for lack of standing because

Petitioners do not have a legal interest in the Diamond. The Petitioners' alleged

interest is principally based on a purported Loan Agreement with the "Trusted

Counterparty" (*i.e.*, Moyal) who allegedly provided the Diamond to the Petitioners

as collateral. However, because Defendant stole the Diamond from its owner,

Defendant could not convey title to Moyal. Furthermore, the Victim, as the owner of

the Diamond, did not entrust Defendant with the Diamond, nor was Defendant a

merchant who regularly sold diamonds and similar valuables; accordingly,

Defendant could not transfer ownership of the Diamond to Moyal. Because Moyal

had no legal interest in the Diamond, he could not convey a security interest in the

Diamond to the Petitioners.

### i.   Defendant Did Not Have Title in the Diamond and Thus Could Not Convey Title to Moyal.

Because Defendant sold the Diamond to Moyal, a jeweler in New Jersey, the

nature of Moyal's interest in the Diamond can be determined by looking at New

Jersey law. *See Kennedy,* 201 F.3d at 1334. Under N.J.S.A. § 12A:2-403(1), a

purchaser "acquires all title which the transferor had or had power to transfer."  *See*

N.J.S.A. § 12A:2-403(1). It is well settled law in New Jersey that a thief acquires no

8

title to the goods he steals, and thus cannot transfer good title to others, regardless of the purchaser's good faith and ignorance of the theft. *See O'Keefe v. Snyder*, 416 A.2d 862, 867 (N. J. 1980); *see also Touch of Class Leasing v. Mercedes-Benz Credit of Canada, Inc.*, 591 A.2d 661, 667 (N.J. Super Ct. App. Div. 1991) ("If a party merely converts the goods to his own use after obtaining possession through some manner other than a transaction of purchase . . . he possesses void title and therefore, cannot pass good title even to a good faith purchaser for value").

New Jersey Uniform Commercial Code's "good faith purchaser" rule does permit "a person with ***voidable title*** . . . to transfer good title to a good faith purchaser for value. N.J.S.A. § 12A:2-403(1) (emphasis added). Under this rule, "[w]hen goods have been delivered under a transaction of purchase the purchaser has such power even though . . . [t]he delivery was procured through fraud punishable as larcenous under the criminal law." *Id.* In essence, the law "provides that the sale to a good faith purchaser for value cures the defects in the seller's voidable title." *Touch of Class Leasing*, 591 A.2d at 667.

However, for the seller to even acquire voidable title, he must have obtained delivery of the goods through a "transaction of purchase." *See* N.J.S.A. § 12A:2-403(1); *Touch of Class Leasing*, 591 A.2d at 667. The phrase "transaction of purchase" is "generally limited to those situations in which a third party delivers goods to a subsequent seller, intending for the subsequent seller to become the owner of the goods." *Touch of Class Leasing*, 591 A.2d at 667. In *Touch of Class Leasing*, the appellate

9

court found that an automobile dealer was not a "good faith purchaser" of a vehicle because the company who sold the vehicle to the dealer had never purchased the vehicle; rather, the company's owner had only leased the vehicle from Mercedes Benz, and unlawfully converted the vehicle when he sold it to the automobile dealer. *See id.* The court concluded that the theft of the vehicle vested the automobile dealer with only void title, and therefore prevented any subsequent purchaser of the vehicle from obtaining lawful title to the vehicle. *Id.*

Similarly, Defendant did not purchase the Diamond from the Victim. Rather, he only had possession of the Diamond because of his mail fraud scheme. Thus, Defendant had void title and could not pass good title in the Diamond to Moyal.

### ii. *Defendant Did Not Have Power to Transfer Rights in the Diamond Under the Merchant Entrustment Rule.*

Moreover, Defendant did not have power to transfer rights in the Diamond to Moyal under the merchant entrustment rule codified at N.J.S.A. § 12a:2-403(2), which provides that "[a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer all rights of the entruster to a buyer in ordinary course of business." N.J.S.A. § 12A:2-403(2); *see Martin v. Nager*, 469 A.2d 519, 526 (N.J. Ch. 1983). For a buyer to acquire good title to goods under this provision, he must prove (1) entrustment of goods, (2) to a merchant who deals in goods of the kind, and (3) followed by sale to a buyer in the ordinary course of business. *Touch of Class Leasing*, 591 A.2d at 668. Here, Moyal did not acquire any rights in the Diamond because the Victim, as the owner of the

Diamond, did not entrust Defendant with the Diamond. Instead, the Diamond was taken from the Victim's residence without his knowledge. *See* Doc. 36. The merchant entrustment rule only provides a merchant with the "power to transfer all rights of the ***entruster***." N.J.S.A. § 12A:2-403(2) (emphasis added). M.S. may have entrusted the Victim's valuables with Defendant, believing Defendant would perform spiritual acts on the items and return them, but M.S. had no rights in the Diamond to transfer.

Furthermore, N.J.S.A. § 12A:2-403 "applies only to a 'merchant who deals in goods' of the kind entrusted, meaning one who is engaged regularly in selling goods of the kind." *Touch of Class Leasing*, 591 A.2d at 668 (citing *Timber v. Automation Design & Mfg. Corp.*, 324 A.2d 602, 606 (N.J. Super. Ct. Law Div. 1974)).; *see also Nager*, 469 A.2d at 526 ("The UCC broadens pre-code law so that even a bailee, who has no authority whatsoever to make a sale, can confer good title to goods on a third party, if such bailee regularly sells the same kind of goods."). Before the instant offense, Defendant did not regularly sell jewelry or other valuables, *see* Defendant's Presentence Investigation Report at ¶¶ 66-68, and thus cannot be considered a "merchant" who deals in diamonds. Thus, Defendant never held title to the Diamond and could not transfer any rights to Moyal.

> ### iii.        *Moyal Could Not Convey a Security Interest in the Diamond to the Petitioners Because He Had No Rights in the Diamond Or Power to Transfer Rights in the Diamond.*

Petitioners claim that Moyal granted them a security interest in the Diamond.

Under New York's Uniform Commercial Code,[4] "[a] security interest attaches to collateral when it becomes enforceable against the debtor." N.Y. U.C.C. § 9-203(a). A security interest is enforceable only if:

> (1) value has been given;
>
> (2) *the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party*; and
>
> (3) one of the following conditions is met:
>
>> (A) the debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;
>>
>> (B) the collateral is not a certificated security and is in the possession of the secured party under Section 9-313 pursuant to the debtor's security agreement;
>>
>> (C) the collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under Section 8-301 pursuant to the debtor's security agreement; or
>>
>> (D) the collateral is deposit accounts, electronic chattel paper, investment property, or letter-of-credit rights, and the secured party has control under Section 9-104, 9-105, 9-106, or 9-107 pursuant to the debtor's security agreement.

N.Y. U.C.C. § 9-203(b) (emphasis added). Thus, "[n]otwithstanding any agreement between the debtor and the creditor, if the debtor has no rights in the collateral, no security interest in that collateral comes into existence." *Matter of Emergency Beacon Corp.*, 665 F.2d 36 (2d Cir. 1981) (citing J. White & R. Summers, Uniform Commercial Code § 23-4, at 916 (2d ed. 1980)) (applying New York UCC law and

---

[4] For purposes of this motion, the United States does not challenge that New York law defines what interest the Petitioners have in the Diamond, despite the Petitioners' claim being silent as to where the Loan Agreement was executed.

finding that the debtor did not have rights in vehicles and thus could not covey a security interest in the vehicles); *Lebedowicz v. Meserole Factory LLC*, 941 N.Y.S. 2d 538, 2011 WL 6380290, at *6 (Sup. Ct. 2011) (unpublished) ("Under UCC article 9 as enacted in New York law, a security interest in personal property does not attach and is not enforceable until the 'debtor' has rights in the 'collateral.'"). The requirement that a debtor have rights in the collateral is a reflection of the general principle that "one cannot encumber another man's property in the absence of consent, estoppel, or some other special rule." *See Matter of Pubs, Inc. of Champaign*, 618 F.2d 432, 436 (7th Cir. 1980).

Here, Moyal—the debtor—could not have conveyed a security interest in the Diamond to Petitioners—the creditors—because Moyal never acquired any rights in the Diamond to transfer. In New York, as in New Jersey, a thief cannot pass good title, and buyers who purchase stolen property from a thief cannot pass good title either. S*ee Bakalar v. Vavra*, 619 F.3d 136, 140-41 (2d Cir. 2010) (explaining that, under New York law, "a thief cannot pass good title, . . . even if there have been several subsequent buyers and even if each of those buyers was completely unaware that she was buying stolen goods," citing *Menzel v. List*, 267 N.Y.S. 2d 804 (Sup. Ct. 1966)). Indeed, "New York case law has long protected the right of the owner whose property has been stolen to recover that property, even if it is in the possession of a good-faith purchaser for value." *Id.* at 141 (quoting *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y. 2d 311, 317 (Ct. App. 1991)); *see also Candela v. Port Motors*, 208

13

A.D.2d 486, 487 (App. Div. 1994) (explaining that, "[a] car thief is not a purchaser," such that if it is proven that a party purchased a vehicle from a thief, or from the successor of a thief, the party could not convey good title to a subsequent purchaser for value; party's title would be void, not merely voidable); *Green v. Arcadia Fin.*, 174 Misc. 2d 411 (Sup. Ct. 1997)) (explaining that "[a] purchaser who purchases a vehicle from a thief, or from a dealer who has purchased from a thief does not acquire title"); *see also DiLorenzo v. General Motors Acceptance Corp.*, 814 N.Y.S. 2d 750, 750 (App. Div. 2006) (stating that "[a] person who . . . innocently purchases stolen property from a thief, nonetheless acquires no title to that property"). This rule "reflects an overarching concern that New York not become a marketplace for stolen goods." *See Bakalar*, 619 F.3d at 141.

### F.   The Petitioners Have Failed to Comply With 21 U.S.C. § 853(n)(3)'s Pleading Requirements

Furthermore, the petition does not comply with the pleading requirements of 21 U.S.C. § 853(n)(3), which requires petitioners to "set forth the nature and extent of the petitioner' right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3). Petitioners only state, in conclusory fashion, that on or about September 14, 2022, value was given to the "Trusted Counterparty" in the form of a $2.8 million loan advance consisting of approximately $800,000 in wire and cash equivalent payments and $2 million in family gold and jewelry accumulated by

Grunberg's father and grandfather. Although the petition identifies four petitioners, the petition does not state the amount each petitioner loaned to the "Trusted Counterparty" and thus fails to allege the extent and scope of each petitioner's security interest in the Diamond.

Moreover, the Petitioners failed to identify the debtor of the loan in their verified petition. Based upon past conversations with Petitioners' counsel and Moyal's counsel, the United States presumes the "Trusted Counterparty" is Moyal. But section 853(n)(3) requires Petitioners to provide such details. Likewise, Petitioners' failure to state that Moyal has rights in the Diamond, or the power to transfer rights in the Diamond, as required for the attachment and enforcement of a security interest, are fatal defects. *See* N.Y. U.C.C. § 9-203. Petitioners do not state the purpose of the loan, where it was executed, or which state's law governs its enforcement. Nor do Petitioners state how each of the four petitioners took possession of the Diamond on or about September 14, 2022. Petitioners do not even state whether the Loan Agreement was written or oral. Under 21 U.S.C. § 853(n)(3), Petitioners were required to allege more details about the Loan Agreement and surrounding circumstances to establish that the loan and alleged security interest are legally valid. *See United States v. Akhtar*, No. 17-2339, 2018 WL 5883930, at *2-3 (6th Cir. 2018) (holding that third-party's petition claiming an interest in account funds was subject to dismissal for failure to comply with section 853's pleading requirements because the petitioner failed to provide sufficient facts about the

15

circumstances of the loan agreements allegedly made with the defendant, and the structure of the loans, so as to show that she was a secured creditor); *see also United States v. Raniere*, No. 1:18-cr-00204-NGG-VMS, 2020 WL 264958, at *2 (E.D.N.Y. 2020); *United States v. Pegg*, No. 7:97–CR–30(HL), 1998 WL 34309460, at *3 (M.D. Ga. Nov. 25, 1998).

For example, in *Raniere*, the petition simply stated that the petitioner had a 10% interest in the assets, proceeds and property of a named company "by agreement" without indicating any other relevant surrounding facts about the agreement, such as whether the agreement was oral or written, whether the company authorized or recorded the agreement, or whether the agreement resulted in the issuance of the company shares in the petitioner's own name. 2020 WL 264958, at *2. The court dismissed the petition pursuant to § 853(n)(3), finding the petition was "bereft of details 'that could be used to determine [the purported agreement's] validity." *Id.*

Similarly, in *Pegg*, the petitioner claimed an ownership interest in real properties acquired by purchase, and stated that his brother, by agreement, acted as his nominee in the acquisition and maintenance of the property. 1998 WL 34309460, at *3. The district court found the claim to be "wholly inadequate" under section 853(n)(3) because "[n]o facts were alleged regarding the claimed ownership, such as when the property was acquired, where it was acquired, how it was acquired, other circumstances surrounding the alleged acquisition, when his brother became his

16

nominee, how his brother became his nominee, the details of the alleged arrangement, and other details concerning the nominee relationship." *Id.*

As Petitioners have failed to allege the nature and extent of their respective interests in the Diamond, and the circumstances of the Loan Agreement which purportedly granted them their interests in the Diamond, their petition should be dismissed for failure to meet the pleading requirements of 21 U.S.C. § 853(n)(3). *See Hassan*, 411 F. Supp. 3d at 1308–09 (dismissing third-party petition pursuant to 21 U.S.C. § 853(n)(3) where petitioner only alleged that she had a marital interest in the property and that she holds the interest as a "tenant by the entirety," but made no mention of the extent of her interest and the time and circumstances of her acquisition of her right, title, or interest in the property); *Lima*, 2011 WL 5525339 at *2 (dismissing third-party petition for failure to state a claim to forfeited 401(k) funds under 21 U.S.C. § 853(n)(3) where petition only contained conclusory allegations that the assets were "marital assets" and "joint property" by reason of petitioner and her children being listed as beneficiaries). Moreover, because Petitioners have failed to allege a legal interest in the property, a hearing is unnecessary. *See Hassan*, 411 F. Supp. 3d at 1310.

## III.   <u>Conclusion</u>

In sum, Petitioners have not demonstrated that they hold a legal interest in the Diamond, and thus lack standing to contest the forfeiture pursuant to Rule

32.2(c)(1)(A) and 21 U.S.C. § 853(n)(2).[5] Moreover, Petitioners' claim does not comply with the pleading requirements of 21 U.S.C. § 853(n)(3). Thus, the United States respectfully requests that the Court dismiss and/or strike the Petitioners' claim for lack of standing and for failure to state a claim.

Respectfully Submitted

ROGER B. HANDBERG
United States Attorney

By:    *s/Nicole M. Andrejko*
NICOLE M. ANDREJKO
Assistant United States Attorney
Florida Bar No. 0820601
400 West Washington St., Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7560
Facsimile: (407) 648-7643
E-Mail: Nicole.Andrejko@usdoj.gov

---

[5] Because Petitioners cannot establish a legal right, title, or interest in the Subject Assets, the Court need not evaluate whether the Petitioners can meet the remaining elements of a "bona fide purchaser" under 21 U.S.C. § 853(n)(6)(B). *See United States v. O'Brien*, 181 F.3d 105, 1999 WL 357755, at *2 (6th Cir. 1999) (Table) (because claimant had no legal interest in the property as a matter of state law, court need not reach bona fide purchaser claim); *United States v. Madoff*, No. 09 Cr. 213(DC), 2012 WL 1142292, at *5 (S.D.N.Y. Apr. 3, 2012) (attorney who never perfected an attorney's lien under state law lacked standing and likewise cannot satisfy first element of § 853(n)(6)(B)). However, if the petition is not dismissed, the United States intends to contest Petitioners' allegation that they were "reasonably without cause to believe that the property was subject to forfeiture" at the final hearing.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 12, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system that will send a notice of electronic filing to counsel of record.

<u>*s/Nicole M. Andrejko*</u>
NICOLE M. ANDREJKO
Assistant United States Attorney

19