UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 8:22-cr-437 (WFJ) (SPF)

JOHN LEE
a/k/a "Giovanni"
_____/

### GRUNBERG PETITIONERS' OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS AND/OR STRIKE PETITIONERS' VERIFIED CLAIM

Rosalie Grunberg, Joseph Grunberg, Lombard Mutual LLC ("Lombard"), and Wolf Grunberg Corp. ("Wolf Grunberg") (collectively, the "Grunberg Petitioners"), by and through their undersigned counsel, hereby oppose the Government's Motion to Dismiss and/or Strike the Petitioners' Verified Claim ("Motion" or "Mot."). ECF 74.

The Motion should be denied for two reasons. First, the Grunberg Petitioners hold a valid legal interest in the 103/86 Carat D Color Internally Flawless Clarity Cushion Brilliant Cut Natural Diamond (the "Diamond") and therefore have standing to contest its forfeiture and/or disposition. Second, the Grunberg Petitioners satisfy the pleading requirements of 21 U.S.C. § 853(n)(3).[1] In support of their positions, the Grunberg Petitioners submit the following memorandum of law.

### MEMORANDUM OF LAW

I.  **Factual Background & Procedural History**

Joseph Grunberg and his mother, Rosalie Grunberg, own and operate two small family-owned businesses in New York City: Wolf Grunberg, which buys and sells diamonds and other

---

[1] Requiring that a petitioner "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3).

jewelry; and Lombard, which, in addition to buying and selling, lends against diamonds and other jewelry that they hold as collateral. Pet. ¶ 3, ECF 64.

On or about September 14, 2022, in New York City, Mr. Grunberg, on behalf of the Grunberg Petitioners, agreed to loan Solomon Moyal[2] of Ronsol Enterprises $4 million (the "Loan") against the Diamond, which the Grunberg Petitioners would hold as collateral.[3] *Id.* ¶ 5. In a series of advances under the Loan, Mr. Grunberg loaned Mr. Moyal $2.8 million. *Id.* Mr. Grunberg, on behalf of the Grunberg Petitioners, took possession of the Diamond in good faith, having a bona fide belief that it was legitimate collateral for the Loan, and with no information available to him, nor to any of the Grunberg Petitioners, to indicate in any way that the Diamond had been stolen, or was not lawfully in the possession of the person who gave it to him. *Id*. ¶¶ 4-5. Indeed, Mr. Moyal, whom the Grunberg Petitioners had loaned money to with jewelry as collateral and engaged in other lending transactions with for almost a decade, showed Mr. Grunberg a picture of the GIA certificate for the Diamond. Unbeknownst to the Grunberg Petitioners, however, Mr. Moyal had purchased the Diamond from Defendant John Lee, who (presumptively also unknown to Moyal) had obtained the Diamond as part of his fraudulent scheme. *Id*.

On November 23, 2022, upon learning that the Diamond was a part of a fraudulent scheme, the Grunberg Petitioners, through counsel, voluntarily surrendered the Diamond to the FBI. *Id*. ¶

---

[2] The Court should reject the Government's attempt to make issue of the Grunberg Petitioners' failure to "identify the debtor of the loan in their verified petition." Mot. at 15. The identity of the "Trusted Counterparty" is no secret to the Government. The Grunberg Petitioners identified the "Trusted Counterparty" as Mr. Moyal in an 81-page submission to the Government in August 2023, and which the Grunberg Petitioners sent to the Government again in March 2024 at the same time as the instant Petition. The Grunberg Petitioners chose not to identify Mr. Moyal by name in their Petition to avoid publicly disclosing Mr. Moyal as a victim of the Defendant's scheme. With the Court's permission, the Grunberg Petitioners are glad to file their 81-page submission to the Government under seal with the Court pursuant to Local Rule 1.11(b).

[3] The Loan Agreement was oral, as is common in the Diamond District, and consistent with industry practice and the parties' course of dealing. Further, and as explained below, the Grunberg Petitioners' 81-page submission to the Government in August 2023 detailed the Loan Agreement and the funds loaned to Mr. Moyal.

6. Federal authorities asked Mr. Grunberg to sign a Consent to Forfeiture, waiving any objections or challenges to the forfeiture of the Diamond. *Id*. Mr. Grunberg refused to sign the Consent to Forfeiture, in light of, and consistent with the Grunberg Petitioners' secured interest in the Diamond in respect of the $2.8 million they already had advanced on the Loan. *Id*.

On December 21, 2022, the United States filed an indictment charging the Defendant, a self-proclaimed "master psychic and love and relationship advisor," with four counts of mail fraud and three counts of interstate transportation of stolen property for his role in a scheme to defraud his customers of money and property for personal gain (the "Indictment"). ECF 15. The Indictment alleged that, as part of the fraudulent scheme, the Defendant would convince his customers that certain of their valuables, including jewelry, needed to be cleansed of evil spirits. *Id.* ¶ 9(e). He would then instruct the customer to ship the valuables to him to be cleansed, but rather than return the valuables to the customer, he would offer the valuables to potential buyers for barter and/or sale. *Id.* ¶ 9(f)-(g).

Importantly, the Indictment makes clear that the Defendant was a "merchant" under the Uniform Commercial Code ("UCC") and indicates that the buyers were *bona fide* purchasers because the Defendant held himself out as authorized to sell valuables like the Diamond.[4] The Indictment specifically alleges that, as part of his scheme, the Defendant: (1) "would and did transport, and cause to be transported, valuables in interstate commerce for barter and/or sale"; (2) "would and **did represent himself to potential buyers of said valuables as authorized to offer the valuables for barter and/or sale**"; and (3) "would and did barter and/or sell valuables and would and did receive watches, gemstones, gold bars, and cash in exchange for the same." *Id.* ¶

---

[4] It is also our understanding based on conversations with the Government that Lee had the GIA certificate for the Diamond and the other jewels he obtained as part of his fraudulent scheme. That fact further underscores that the Defendant acted as a "merchant" here and that buyers were *bona fide* purchasers.

3

9(g)-(i) (emphasis added). At least one of these valuables, the Diamond, was sold by the Defendant to Mr. Moyal, who then gave it to the Grunberg Petitioners as collateral for the Loan. Pet. ¶ 8.

On August 22, 2023, the Grunberg Petitioners filed a detailed, 81-page submission with the Government documenting the Loan, and evidencing the Grunberg Petitioners' security interest in the Diamond. This submission included a sworn declaration by Mr. Grunberg and 15 exhibits, including several bank statements and contemporaneous notes detailing the transactions by which the Grunberg Petitioners advanced $2.8 million under the Loan.

The Defendant entered into a plea agreement with the United States on November 6, 2023, whereby he agreed to plead guilty to one count of mail fraud and one count of interstate transportation of stolen property and forfeit to the United States any and all assets and property subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). ECF 36. The United States specifically identified the "Diamond" as an asset to be forfeited, among others, and on December 19, 2023, moved pursuant to 21 U.S.C. § 853(p) for a preliminary order of forfeiture. ECF 45. This Court entered a preliminary order of forfeiture on February 13, 2024, directing that the Diamond be forfeited to the United States, subject to 21 U.S.C. § 853(n). ECF 47.

On March 21, 2024, the Grunberg Petitioners filed the instant Petition. ECF 64. On April 3, 2024, this Court took the Petition under advisement and ordered "[a]ny party having an interest related to, or objection to," the Petition to file a written response no later than April 12, 2024. ECF 69.

On April 12, 2024, the Government moved to dismiss the Petition. In its Motion, the Government indicated for the first time that it will no longer be moving for a final order of forfeiture as to most of the property recovered. Mot. at 3 n.2 ("The United States will not seek a final order of forfeiture for the jewelry stolen from the Victim. Instead, it seeks to: (1) extinguish

4

any ownership claim the defendant may assert by obtaining a preliminary order of forfeiture; and (2) return the property to the rightful owner.").[5] Notably, no other parties have filed a response to the Petition or otherwise laid claim to the Diamond.[6]

## II. Argument

### A. Legal Standard

A court may dismiss a third-party petition "for lack of standing, for failure to state a claim, or for any other lawful reason" in an ancillary proceeding. Fed. R. Crim. P. 32.2(c)(1)(A). "[U]nder Rule 32.2 of the Federal Rules of Criminal Procedure, a motion to dismiss a third party petition in a forfeiture proceeding is treated like a motion to dismiss a civil complaint under Rule 12(b) of the Federal Rules of Civil Procedure." *United States v. Rothstein*, 2010 U.S. Dist. LEXIS 74423, at *4-6 (S.D. Fla. July 22, 2010) (denying the Government's motion to dismiss the petition). A movant bringing a motion to dismiss "sustains a very high burden." *Kakawi Yachting, Inc. v. Marlow Marine Sales, Inc.*, 2014 U.S. Dist. LEXIS 193488, at *18 (M.D. Fla. Apr. 11, 2014) (denying a motion to dismiss).

In deciding a motion to dismiss, "the court must accept the facts pleaded as true and construe them in a light most favorable to the plaintiff." *Id.* "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which she bases her claim." *Id.* Instead, to survive a motion to dismiss, the petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[5] The Government cites no rule or authority for this change in its position.
[6] The Government asserts that "if the Court allows Petitioners to be heard in the ancillary proceeding, i.e., determines they have a legal interest in the Diamond, the United States will provide the Victim with a copy of the Court's order and request that the Victim file a petition to litigate his ownership interest." Mot. at 3 n.2.

### B. The Grunberg Petitioners Have Standing to Contest the Diamond's Forfeiture

The Government does not contest, for purposes of the Motion, that the Grunberg Petitioners were *bona fide* purchasers for value, and effectively concedes – as it must – that under New York law, a security interest is perfected by the secured party taking possession of the collateral. Instead, the Government argues that Mr. Moyal could not have conveyed a security interest in the Diamond to the Grunberg Petitioners because Mr. Moyal never acquired any rights in the Diamond to transfer. Mot. at 8. The crux of the Government's standing argument is that the Defendant never held title to the Diamond in the first place, because the Government argues that the Defendant "stole" the Diamond from the Victim, and thus, the Defendant could not pass good title to Mr. Moyal.

But the Government is simply wrong, both as a matter of fact and law. The facts alleged by the Government indicate that the Defendant *swindled* the Diamond from M.S. and/or the Victim, and then "sold or bartered" the Diamond to Mr. Moyal who purchased it as a *bona fide* purchaser in the ordinary course of business. Under the UCC and New Jersey's common law, valid title to the Diamond passed to Mr. Moyal, and, in turn, the Grunberg Petitioners received a valid secured interest in the Diamond.

Indeed, the Grunberg Petitioners have standing to contest the forfeiture of the Diamond for three independent reasons. *First*, under the merchant entrustment rule, the Defendant had the power to transfer ownership of the Diamond to Mr. Moyal. *Second*, the Defendant's conveyance of title to Mr. Moyal was valid under well-settled New Jersey common law. *Third*, because, as the Government itself admits, the Defendant acquired possession of the Diamond by fraud rather

6

than theft, the Defendant had "voidable" title to the Diamond, allowing him to convey good title to a *bona fide* purchaser like Mr. Moyal.[7]

### 1. *Defendant Had the Power to Transfer Rights in the Diamond Under the Merchant Entrustment Rule*

Section 12A:2-403 of New Jersey's UCC governs the power to transfer title, the good faith purchase of goods, and entrusting of goods:

> (1) A purchaser of goods acquires all title which the transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has this power even though
>
>> (a) the transferor was deceived as to the identity of the purchaser, or
>>
>> (b) the delivery was in exchange for a check which is later dishonored, or
>>
>> (c) it was agreed that the transaction was to be a "cash sale", or
>>
>> (d) the delivery was procured through fraud punishable under the criminal law.
>
> (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer all rights of the entruster to a buyer in ordinary course of business.
>
> (3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be theft under the criminal law.

N.J. Stat. Ann. § 12A:2-403.

---

[7] In the alternative, the Court should deny the Government's Motion because, as noted above, the Government indicates that it is not seeking a final order of forfeiture here. Mot. at 3 n.2. In a typical forfeiture proceeding, the Government seeks to forfeit proceeds of the defendant's crime, and effectively steps into the defendant's shoes as to their property interest. Here, however, the Government asserts that the Defendant has no legal interest in the Diamond. For the reasons explained in the Petition and in this opposition brief, the Grunberg Petitioners are *bona fide* purchasers for value as to the Diamond. No other party has filed claim to the Diamond. Accordingly, the Grunberg Petitioners should be granted their $2.8 million interest in the Diamond, with the balance of the value of the Diamond to be paid to the Victim referred to in the Indictment.

Under the merchant entrustment rule, as codified in section 12A:2-403(2), a merchant to whom property is entrusted can pass good title to a third party. The purpose of the merchant entrustment rule is to protect buyers in the ordinary course by making owners – not purchasers – shoulder the financial risk associated with fraudulent transactions. If an owner knowingly delivers his property to a merchant, that owner then "'assumes the risk of the merchant's acting unscrupulously'" by selling the property without the owner's consent to an innocent purchaser. *Galin v. Hamada*, 283 F. Supp. 3d 189, 195 (S.D.N.Y. 2017) (citation omitted), *aff'd*, 753 F. App'x 3 (2d Cir. 2018); *see also, e.g.*, *Overton v. Art Fin. Partners LLC*, 166 F. Supp. 3d 388, 400 (S.D.N.Y. 2016) ("The purpose of the merchant entrustment rule is to enhance the reliability of commercial sales … by shifting the risk of resale to one who leaves his property with a merchant.") (quotation marks and citations omitted).

The quintessential example of the merchant entrustment rule is instructive. The owner of an antique painting leaves the painting with an antiques dealer for authentication. Without authorization, the dealer then sells the painting to a third party. Under the merchant entrustment rule, the owner could not sue the third party to have him return the painting because the third party acquired good title to the painting. Elizabeth C. Black, *Entrustment, The Hidden Title Risk of Leaving Your Artwork in the Care or Possession of Others -- Will Your Fine Art Insurance Cover Your Loss? Probably Not*, 1 Spencer's Art L.J. (Dec. 30, 2010), http://www.artnet.com/magazineus/news/spencer/spencers-art-law-journal12-30-10.asp#ftn.id4. The same is true here. The owner of the Diamond entrusted the Defendant with the Diamond. The Defendant was a "merchant," as that term is defined in the New Jersey UCC, because he "deal[t] in goods" like the Diamond. *See* N.J. Stat. Ann. § 12A:2-403(2). And, without authorization, the Defendant sold the Diamond to Mr. Moyal. Mr. Moyal thus acquired good title in the Diamond. *See Id.* § 12A:2-

8

403(3) ("'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and *regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be theft under the criminal law*.") (emphasis added).

In the face of the plain language of the UCC showing that the Grunberg Petitioners have a valid interest in the Diamond, the Government makes a series of factual arguments that the Grunberg Petitioners do not qualify under the UCC's provisions protecting *bona fide* purchasers based upon factual conclusions that are inconsistent with the Indictment and inappropriate for resolution on a motion to dismiss. The Government's Motion must therefore be denied.

The Government primarily argues that the Defendant cannot be considered a "merchant" who deals in diamonds because, according to the Government, "[b]efore the instant offense, Defendant did not regularly sell jewelry or other valuables." Mot. at 11 (citing the Defendant's Presentence Investigation Report at ¶¶ 66-68). However, as the Government knows given its heavy reliance on *Touch of Class Leasing v. Mercedes-Benz Credit of Can., Inc.*, 591 A.2d 661 (N.J. App. Div. 1991), "whether a party to a transaction is a merchant is a factual question" that must be determined based on the circumstances of each case. *Id.* at 668. Further, the Indictment returned by the Grand Jury sets out facts that meet the definition of a merchant under the UCC. The Government cannot now disclaim the Indictment, particularly, where, as here, the Government cites a Presentence Report that is unavailable to the public or the Grunberg Petitioners and thus not properly before this Court as to this Motion.[8] The Indictment states that as part of the mail fraud scheme to which the Defendant pled guilty, the Defendant: (1) "would and did transport, and cause to be transported, valuables in interstate commerce for barter and/or sale"; (2) "would

---

[8] Presentence Reports are only available to the Court, the Government, and the defendant. *See* 18 U.S.C. § 3552(d) (governing disclosure of Presentence Reports).

9

and did represent himself to potential buyers of said valuables as authorized to offer the valuables for barter and/or sale"; and (3) "would and did barter and/or sell valuables and would and did receive watches, gemstones, gold bars, and cash in exchange for the same." *Id.* ¶ 9(g)-(i). That meets the UCC's definition of a "merchant," defined as including a person who "deals in goods of the kind" in question. N.J. Stat. Ann. 12A:2-104(1).[9] In sum, the Indictment alleges that the Defendant represented himself as authorized to sell valuables like the Diamond, and that he sold valuables like the Diamond. That meets the definition of a merchant under the UCC.

Next, the Government argues that Mr. Moyal did not acquire any rights in the Diamond because, while "M.S. may have entrusted the [Diamond] with Defendant … M.S. had no rights in the Diamond to transfer." Mot. at 11. But the nature and scope of M.S.'s rights in the Diamond are questions of fact which the Grunberg Petitioners are entitled to test at a hearing or probe in discovery.

Furthermore, a motion to dismiss based on evidence unavailable to the Grunberg Petitioners – i.e., Defendant's Presentence Report – is inappropriate. The Government's Motion should be denied on these bases alone.

### 2.    *Defendant's Conveyance of Title to Mr. Moyal Was Valid Under Well-Settled New Jersey Common Law Principles of Estoppel*

Even if this Court finds that the elements of the merchant entrustment rule are not perfectly met here, which they are, the original owner of the Diamond would be estopped under New Jersey law from challenging the transfer of title to Mr. Moyal (and, in turn, the Grunberg Petitioners). New Jersey courts recognize "the universally adopted maxim that as between two innocent victims of fraud, the one who created the circumstances which made the wrongful act possible must suffer

---

[9] And, as discussed *supra*, the Defendant also apparently received the GIA certificates for the jewels, further underscoring his "merchant" status.

the loss." *Tumber v. Automation Design & Mfg. Corp.*, 324 A.2d 602, 606 (N.J. Sup. Ct. 1974); *see also Zendman v. Harry Winston, Inc.*, 111 N.E.2d 871, 875-76 (N.Y. 1953) (applying New Jersey law and finding that the entruster was estopped from claiming that he had not authorized the sale of the jewelry).

New York's highest court, the New York Court of Appeals, explained the relevant New Jersey rule in *Zendman*. The facts of *Zendman* are on all fours here.  In *Zendman*, plaintiff Jane Zendman purchased a diamond ring at a gallery auction in New Jersey.  The defendant Harry Winston, Inc., a diamond merchant, was the actual owner of the ring.  The defendant had loaned the ring to the auctioning gallery with instructions that the auctioning gallery could only sell the ring under certain circumstances that were not met.  However, the gallery auctioned the ring in error and without the defendant's permission to the plaintiff, innocent purchaser Ms. Zendman. The defendant sought the return of the ring and prevailed in the lower courts.  The New York Court of Appeals reversed, finding that the defendant was precluded on the principle of estoppel from claiming that the gallery was not authorized to sell the ring to Ms. Zendman:

> It is our judgment that, by reason of the pertinent New Jersey provision (N.J. Stat. Ann., § 46:30-29) . . . defendant is precluded, on the principle "of estoppel or something akin to estoppel" (2 Williston on Sales [Rev. ed., 1948], § 311, p. 242), from claiming that Brand was not authorized to sell the ring to plaintiff. "Subject to the provision of this chapter," the statute recites, "where goods are sold by the person not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, *unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell*."

*Zendman*, 111 N.E.2d at 873-74.

Here, M.S. and the Victim would be estopped from seeking the Diamond from the Grunberg Petitioners.  All parties are victims of the Defendant's scheme, but the Grunberg Petitioners did not make the wrongful act by the Defendant possible—M.S. and the Victim did by

11

sending the Diamond to the Defendant (and especially by including the GIA certificate). Accordingly, M.S. and the Victim would be estopped under New Jersey law from seeking recovery of the Diamond from the Grunberg Petitioners.

### 3. *Defendant Had Voidable Title in the Diamond and Thus Could Convey Valid Title to Mr. Moyal*

"A person with voidable title has power to transfer a good title to a good faith purchaser for value." N.J. Stat. Ann. § 12A:2-403(1). The Government does not dispute that Mr. Moyal was a good faith purchaser for value. Instead, the Government argues that the Defendant had "void" rather than "voidable" title, and thus could not convey good title to Mr. Moyal. Mot. at 8-10. In distinguishing "void" title from "voidable" title, courts have drawn a comparison between a thief, who wrongfully takes goods against the will of the owner and has void title, and a swindler, who fraudulently induces the owner to deliver goods voluntarily and has voidable title. *See, e.g.*, *Swift & Co. v. First Nat'l Bank*, 168 A. 827, 829 (N.J. Ch. 1933) ("the said conveyances, though fraudulent, were voidable only, and not void"); *United States v. Lavin*, 942 F.2d 177, 186 (3d Cir. 1991) ("X has voidable title in a painting, because he fraudulently acquired it from Y"); *Rudiger Charolais Ranches v. Van De Graaf Ranches*, 994 F.2d 670, 672 (9th Cir 1993) ("[v]oidable title is the title obtained by a wrongdoer when a victim voluntarily turns property over to the wrongdoer").

Contrary to the Government's assertions in its Motion, the Defendant did not *steal* the Diamond.[10] Rather, as the Government itself alleges in the operative instrument – the Indictment

---

[10] The Government's consistent reliance on case law for the proposition that "a thief acquires no title" is misplaced – none of these cases come close to reflecting the facts in the present case. Mot. at 8-9 (citing *O'Keeffe v. Snyder*, 416 A.2d 862, 867 (N. J. 1980) (discussing title in the context of physically stolen paintings); *id.* at 13-14 (citing *Bakalar v. Vavra*, 619 F.3d 136, 149 (2d Cir. 2010) ("Grunbaum never voluntarily intended to pass title to the Drawing. On the contrary, the circumstances strongly suggest that he executed the power of attorney with a gun to his head."); *Menzel v. List*, 267 N.Y.S.2d 804, 815 (Sup. Ct. 1966) (discussing a painting that was originally seized by "an organ of the Nazi party"); *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 314 (Ct. App. 1991) ("The Guggenheim believes that the [Chagall] gouache was stolen from its premises by a mailroom employee sometime in the late

12

– the Defendant procured the Diamond "by means of false and fraudulent pretenses." ECF 15 ¶ 8. By obtaining possession of the Diamond through fraud rather than theft, the Defendant acquired "voidable" title, and was therefore able to pass good title to a good faith purchaser for value like Mr. Moyal.[11]

The Government argues in its Motion that the Defendant did not obtain voidable title because he "did not purchase the Diamond from the Victim," and instead "had possession of the Diamond because of his mail fraud scheme." Mot. at 10.[12] In so arguing, the Government ignores the UCC's definition of "purchase," which includes any "voluntary transaction creating an interest in property." *See* N.J. Stat. Ann. § 12A:1-201(b)(29). Even if the Court finds that something more than possession is required for a "transaction of purchase," the Grunberg Petitioners are at the very least entitled to discovery on the nature of the relationship and agreement between the Defendant and the Victim and/or M.S. For example, how was the Defendant to be paid for his psychic and spiritual cleansing services? Was he permitted to keep some of the valuables, such as the Diamond? Because the Grunberg Petitioners have alleged sufficient facts to establish that the Defendant had "voidable" title, the Court should deny the Government's Motion so that a hearing can be held on this point.[13]

---

1960s."); *Candela v. Port Motors*, 208 A.D.2d 486, 487 (App. Div. 1994) (explaining that a stolen vehicle only grants void title); *Green v. Arcadia Fin.*, 174 Misc. 2d 411, 413 (Sup. Ct. 1997) (discussing title in the context of vehicle theft); *DiLorenzo v. Gen. Motors Acceptance Corp.*, 814 N.Y.S.2d 750, 750 (App. Div. 2006) ("A person who, like the plaintiff, innocently purchases stolen property from a thief, nonetheless acquires no title to that property.")).

[11] The Government's reliance on *Touch of Class Leasing v. Mercedes-Benz Credit of Can., Inc.*, 591 A.2d 661 (N.J. App. Div. 1991) (Mot. at *passim*) to oppose application of the *bona fide* purchaser rule and/or the merchant entrustment rule here is misplaced. Indeed, in that case, there was a contested hearing where the factual record was developed, meaning that it does not support their request for dismissal here without a hearing or discovery. Further, the *Touch of Class Leasing* court found that the purchaser was not a *bona fide* purchaser and did not buy in the ordinary course of business. 591 A.2d at 664, 670.

[12] Further, the Defendant had more than just "possession"; he had the GIA certificate for the Diamond, suggesting that he had "title" to the Diamond.

[13] The facts alleged in the Complaint and in the Indictment do not comport with common sense. This is not to suggest the Government has acted inappropriately—far from it. But it appears crystal clear that not all of the facts regarding the relationship between M.S., the Victim, and the Defendant have been developed. The Grunberg Petitioners are entitled to a hearing to develop the facts here as they relate to the Diamond. If M.S. and the Victim provided the

### 4. *The Grunberg Petitioners Have an Enforceable Security Interest in the Diamond*

Because the Grunberg Petitioners and Mr. Moyal agreed to the Loan in New York, Pet. ¶ 5, the nature of the Grunberg Petitioners' interest in the Diamond as collateral must be determined by looking at New York law. *See United States v. ADT Sec. Servs., Inc.*, 522 F. App'x 480, 490 (11th Cir. 2013) (a petitioner's claimed interest in forfeited property "is evaluated by the law of the jurisdiction creating the asserted interest, *i.e.* state law") (citing *United States v. Ramunno*, 599 F.3d 1269, 1272 (11th Cir. 2010)).

As the Government concedes – as it must – a lender has an enforceable security interest if in possession of collateral absent a formal writing. Mot. at 12. "Under the [New York] UCC, a security interest in negotiable documents or goods is most straightforwardly perfected by the secured party 'taking possession of the collateral.'" *Ancile Inv. Co. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 308 (S.D.N.Y. 2011) (quoting N.Y. U.C.C. § 9-313(a) (McKinney 2010)); *see also Krupnick v Windy Ridge Corp.*, 147 A.D.3d 1247, 1249 (N.Y. App. Div. 2017) ("UCC 9-313 merely provides that a security interest is perfected when a secured party takes possession of the collateral"); *see also Superior Fin. Corp. v. Haskell*, 556 F. Supp. 199, 200-01 (S.D.N.Y. 1983) (finding that the security interest was perfected when Plaintiff took possession).

This enforceable security interest exists for the duration that the lender maintains possession of the collateral. It is important to note that "[i]f perfection of a security interest depends upon possession of the collateral by a secured party, perfection occurs no earlier than the time the secured party takes possession and continues only while the secured party retains

---

Diamond in whole or in part as compensation to the Defendant for his services, the Diamond validly passed to Mr. Moyal and in turn to the Grunberg Petitioners.

14

possession." *Ancile Inv. Co*, 784 F. Supp. 2d at 308 (quoting N.Y. U.C.C. § 9-313(d) (McKinney 2010)).

Here, the Grunberg Petitioners possessed the Diamond until they surrendered the Diamond to federal authorities because the federal authorities indicated, in sum and substance, that the Grunberg Petitioners were required to do so. Pet. ¶ 6. The lack of a formal writing does not affect the Grunberg Petitioners' perfected security interest since a writing is not required where the party has possession. *Recchio v. Mfrs. and Traders Tr. Co.*, 35 A.D.2d 769, 770 (N.Y. App. Div. 1970) (explaining that a security interest that is not in writing is not enforceable "unless the secured party is in possession of the collateral").

Stated otherwise, up until the Government dispossessed the Grunberg Petitioners of the Diamond on or about November 23, 2022, the Grunberg Petitioners had an enforceable security interest in the Diamond. *See Haskell*, 556 F. Supp. at 200-01 (finding that the plaintiff perfected a security interest through possession)*; see also Ancile Inv. Co*, 784 F. Supp. 2d at 308 (explaining that a secured party retains a perfected security interest while the secured party retains possession).

The Government disagrees that a loan transaction took place between the Grunberg Petitioners and Mr. Moyal, stating instead that Mr. Moyal indicated that the Diamond was purchased by the Grunberg Petitioners and not given as security for the Loan. Mot. at 3 n.3. Even if true, this point does not affect the outcome. "Under the UCC, where title to a chattel is obtained by the fraudulent use of a check, a sale to a subsequent innocent purchaser who thereafter conveys title to a later purchaser imparts good title to each of these parties and precludes recovery by the defrauded seller from the subsequent purchasers." *Kohler v. Kelly*, 1977 U.S. Dist. LEXIS 14317, at *14 (S.D.N.Y. Aug. 24, 1977). Thus, the Grunberg Petitioners have an enforceable security

interest whether they received the Diamond as collateral for the Loan, or purchased the Diamond as the Government alleges.

      **C.    The Grunberg Petitioners Have Satisfied the Pleading Requirements of 21 U.S.C. § 853(N)(3)**

The Grunberg Petitioners have complied with the pleading requirements of 21 U.S.C. § 853(n)(3), which requires petitioners to "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3).

The Government first alleges that the Grunberg Petitioners fail to state the amount that each petitioner loaned to Mr. Moyal. Mot. at 14-15. This argument is inconsistent with the facts in the Government's possession and before this Court. As the Government knows from the Petition, the Grunberg Petitioners consist of a mother and son—Joseph Grunberg and Rosalie Grunberg—and their two family businesses, Wolf Grunberg and Lombard. The Grunberg Petitioners face financial devastation and the end of their family businesses if their $2.8 million *bona fide* interest in the Diamond is eliminated. To ensure that their Petition was not dismissed for failure to name the correct party in interest, the Grunberg Petitioners submitted a Petition on behalf of all of the parties in interest.

Next, the Government alleges that it doesn't know that the debtor on the Loan is Mr. Moyal. That argument also is inconsistent with the facts in the Government's possession and before this Court. On August 22, 2023, the Grunberg Petitioners filed an 81-page submission with the Government documenting the Loan provided by the Grunberg Petitioners to Mr. Moyal. Specifically, the Grunberg Petitioners enclosed a declaration by Mr. Grunberg attaching 15

exhibits documenting the Loan and evidencing the Grunberg Petitioners' acquisition of their security interest in the Diamond as collateral.

The Government nevertheless asserts that the Grunberg Petitioners fail to provide sufficient detail regarding their legal interest. In support, the Government primarily cites to case law from other jurisdictions that is wholly inapplicable here. The Government discusses *United States v. Raniere*, 2020 U.S. Dist. LEXIS 8713, at *2 (E.D.N.Y. Jan. 17, 2020), which is inapposite. In *Raniere*, the court dismissed the petition because it contained numerous conclusory legal assertions, *id.* at *5, and only had one factual assertion: "First Principles, Inc. is a Delaware Corporation in which Mr. Raniere has by agreement a 10% interest in the assets, proceeds and property of First Principles, Inc.," *id.* at *6. Here, of course, there is no real dispute regarding the Grunberg Petitioners' interest; they had possession of the Diamond. Their secured interest is self-evident. Moreover, the Grunberg Petitioners filed an 81-page submission detailing their interest.

Next, the Government cites *United States v. Pegg*, where the court noted that the petition "merely recite[s] language from section 853(n) and allege[s] general conclusions, … merely restate[s] information provided" by the Government in the forfeiture order, fails to state the extent of his interest in the total sum of money listed in the forfeiture order, and conclusorily asserts an interest to real property without alleging a single fact in support. 1998 U.S. Dist. LEXIS 23951, at *12 (M.D. Ga. Dec. 9, 1998). Again, the facts of that case bear no relation to the Grunberg Petitioners' perfected security interest here, and their 81-page submission detailing it.[14]

---

[14] The only two cases the Government cites from this District–*United States v. Hassan* and *United States v. Lima*– likewise provide no support for their position. In *Hassan*, the court's finding that the petitioner had no legal interest in the property turned on the petitioner herself not alleging that she held a marital interest, which, even if true, would not create a present interest in the property. 411 F. Supp. 3d 1302, 1308 (M.D. Fla. 2019). And the *Lima* court conducted a hearing on the standing issue, meaning that it does not support the Government's Motion here. 2011 U.S. Dist. LEXIS 131310, at *1 (M.D. Fla. Oct. 19, 2011). Further, the *Lima* court found that the petitioner solely made conclusory allegations insufficient to state a claim, and even if they were sufficient, that the petitioner failed to establish injury to any interest. *Id.* at *9-10.

The Grunberg Petitioners have adequately set forth factual and legal support for their legal interest in the Diamond. The Grunberg Petitioners have asserted both facts and law regarding the good title held by Mr. Moyal in the Diamond, and in all events the enforceable security interest held by the Grunberg Petitioners through possession of the Diamond as collateral for the Loan they made to Mr. Moyal. Dismissal would be premature and inconsistent with applicable legal standards; the Government's contentions should await the ancillary hearing.

## CONCLUSION

In conclusion, the Grunberg Petitioners have demonstrated that they hold a legal interest in the Diamond, and therefore have the standing required to contest its forfeiture or disposition. Moreover, contrary to the Government's assertions, the Grunberg Petitioners have satisfied the pleading requirements of 21 U.S.C. § 853(n)(3). Accordingly, the Government's Motion must be denied.

Dated: May 3, 2024  
      New York, NY

Respectfully submitted,

**REED SMITH LLP**

*/s/ Mark E. Bini*  
Mark E. Bini  
Florida Bar No. 1026547  
599 Lexington Avenue  
New York, NY 10022-7650  
Phone: (212) 521-5400  
Fax: (212) 521-5450  
mbini@reedsmith.com

-and-

200 South Biscayne Blvd, 26th Fl  
Miami, Florida 33131  
Phone: (786) 747-0286

***Counsel for the Grunberg Petitioners***

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 3, 2024, a true and correct copy of the foregoing was served upon all counsel of record via ECF.

*/s/ Mark E. Bini*
Mark E. Bini
Florida Bar No. 1026547
mbini@reedsmith.com
