United States District Court
Middle District of Florida
Tampa Division

**UNITED STATES OF AMERICA,**

v.                                                                No. 8:22-CR-437-WFJ-SPF

**JOHN LEE**
    **A/K/A GIOVANNI.**

    **DEFENDANT.**

---

### PETITION ASSERTING A LEGAL INTEREST IN PROPERTY ORDERED FORFEITED TO THE UNITED STATES

L. J. West Diamonds, Inc. hereby petitions the Court pursuant to 18 U.S.C. § 853(n) for a hearing to adjudicate his interest in certain property ordered forfeited to the Government and states as follows:

#### INTRODUCTION

1.    Petitioner L.J. West Diamonds, Inc. ("L.J. West") brings this petition to contest the United States' effort to forfeit a 15.88 carat fancy gray diamond ("the Gray Diamond") purchased by L.J. West in 2022

2.    L.J. West is a third-generation family-owned business based in New York City with offices in Asia, Europe and Australia.  It is a wholesale diamond dealer specializing in high-value natural-colored diamonds.

3.    L.J. West purchased the Gray Diamond from another diamond dealer in September 2022 in an arms-length commercial transaction in New York City.

4. In May 2023, L.J. West received a grand jury subpoena from the U.S. Attorney's Office in Tampa seeking certain documents concerning the Gray Diamond. In response to the subpoena, West Diamonds produced an invoice reflecting its purchase of the Gray Diamond, a cancelled check showing its payment of the purchase price, and a grading report issued to L.J. West by the Gemological Institute of America ("GIA").

5. Shortly thereafter, the U.S. Attorney's Office informed L.J. West that it wished to take possession of the Gray Diamond as evidence in the criminal prosecution of John Lee. In response to the Government's request, L.J. West repatriated the Diamond from China, where it was being shown to a potential customer, and provided it to the Government.

6. In November 2023, after having the Gray Diamond inspected by its own experts and re-examined by the GIA, the Government returned the Diamond to L.J. West. The U.S. Attorney's Office informed L.J. West that the Government no longer needed the Gray Diamond as evidence and it that it had concluded that there was no basis for the Government to seek its forfeiture.

7. On or about February 26, 2024, L.J. West consigned the Gray Diamond to a potential buyer in Europe for inspection and evaluation. The buyer expressed an interest to L.J. West in purchasing the Gray Diamond.

8. On or about May 2024, despite its prior representations, the Government informed L.J. West that it intended to seek forfeiture of the Gray Diamond. On or about May 24, 2024, the Government notified L.J. West that the Court had issued a preliminary order of forfeiture for the Gray Diamond.

9.     As set forth herein, West Diamonds has a legal right, title and/or interest in the Gray Diamond. West Diamond's was a bona fide purchaser for value of such right, title and/or interest and when it purchased the Gray Diamond it was reasonably without cause to believe that it was subject to forfeiture. Accordingly, pursuant to 21 U.S.C. § 853 (c) and (n)(6)(B), the Gray Diamond is not subject to forfeiture to the United States.

### The Petitioner

10.     L.J. West is a New York corporation with its principal place of business in New York City. It is one of the world's premier dealers in rare colored diamonds, and over the last four decades it has bought and sold some of the world's most prominent colored diamonds.

11.     Lawarence J. West is the President of L.J. West.

### Petitioner's Purchase of the Diamond

12.     In or about mid-September 2022, a company named Australian Diamond Supply Ltd., ("ADS") contacted L.J. West to inquire if it would be interested in seeing a 15.88 carat pear-shaped dark gray diamond. Like L.J. West, ADS is a wholesale diamond specializing in natural-colored diamonds. L.J. West has done business with ADS for approximately 30 years and during that time has engaged in numerous transactions with ADS involving high-value colored diamonds.

13.     In response to ADS's inquiry, L.J. West said it would be interested in seeing the Gray Diamond. That same day, or shortly thereafter, a representative of ADS's brought the Gray Diamond to West Diamond's office in New York City and showed it to Lawrence West and to L.J.'s West's Vice President, Scott West. L.J. West indicated to ADS that it was interested in the Gray Diamond but thought the asking

3

price was too high. It offered to buy the Gray Diamond for a lower price, but its offer was rejected. After two or three days of negotiations the parties agreed upon a sale price.

14. On September 23, 2022, L.J. West purchased the Gray Diamond from ADS for the agreed upon sales price. ADS issued L.J. West an invoice for the sale and gave L.J. West possession of the Gray Diamond. That same day, L.J. West provided ADS with a check payable to ADS for the full purchase price. Copies of ADS's invoice to L.J. West and L.J. West's check to ADS check are annexed hereto as Exhibits A and B respectively.

15. L.J. West's purchase of the Gray Diamond was, in every respect, a transaction conducted in the ordinary course of L.J. West's business. L.J. West buys colored diamonds of this value and greater on a regular basis. The seller was a reputable dealer in this type of goods with whom L.J. West had done business for decades. The sale price was for a fair wholesale market value, was accurately reflected on an invoice provided by the seller and was paid via a check made payable to seller.

16. Moreover, upon closing the sale, the seller provided L.J. West with an original GIA certificate for the Gray Diamond dated August 30, 2022. There are no title documents or central ownership registry for diamonds. However, virtually all diamonds of significant value are certified by the GIA. In the diamond trade, the seller's possession of an original GIA certificate, particularly a recently issued certificate such as the one provided by ADS, is treated as proof of the seller's right to sell a stone.

17. The GIA is the world's foremost diamond laboratory. GIA certificates (which the GIA refers to as grading reports) do not identify a diamond's owner, but rather, constitute the *de facto* official record of a diamond's weight, color, cut and clarity

(i.e. the primary factors that affect a diamond's value) and list certain other physical attributes of the diamond.  When the GIA evaluates a diamond for the issuance of a certificate, it examines the diamond's microscope structure and maintains a record of that information.  Even if the diamond is subsequently altered, the GIA is regularly able to identify it by matching details of its structure at the microscope level to information in the GIA's records.

18.   The GIA maintains a "watch list" of diamonds that have been reported to the GIA as stolen.  The GIA provides this service as part of it "consumer protection mission."[1]  This service is well-known to and regularly utilized by law-enforcement agencies around the world, as well by diamond dealers and insurers.  When a diamond is submitted to the GIA for a certificate, the GIA checks to see if it matches any of the diamonds on its watch list.  If a submitted diamond matches a diamond on the watch list, the GIA will not return the diamond to the submitter without a court order or the consent of all interested parties and will notify law-enforcement authorities when appropriate.

19.   Diamond merchants are aware of the GIA's ability to identify a stolen diamond and understand that a seller could not likely obtain a certificate from the GIA for a stolen diamond.  A seller's ability to produce a recently issued GIA certificate is therefore treated in the trade as proof of the seller's right to sell a diamond.

20.   After purchasing the Gray Diamond and receiving the original August 30, 2022 GIA certificate, L.J. West re-submitted the diamond to the GIA for additional testing to ascertain certain information not included on the standard certificate provided to it by ADS.  The GIA provided L.J. West with the additional testing results

---

[1] https://www.gia.edu/gia-news-press/gia-helps-recover-diamonds-in-colorado

and an updated certificate dated October 26, 2022, and returned the Gray Diamond to L.J. West.

21. After receiving the Gray Diamond back from the GIA, L.J. West maintained it in its inventory, showing and/or consigning it to potential buyers as the need arose. On or about May 22, 2023, LJ West received a grand jury subpoena from the Office of the U.S. Attorneys for the Middle District of Florida seeking documents related to L.J. West's purchase of the Diamond. L.J. West timely responded to the subpoena by providing the Government with the copies of the sales invoice it received from ADS, L.J. West's check for payment of the purchase price, and the October 26, 2022, certificate that L.J. West had received from the GIA.

22. In or about late-July 2023, the U.S. Attorney's Office for the Middle District of Florida informed L.J. West that the Gray Diamond was needed as evidence in its criminal case against John Lee and that the Government wished to take possession of the Gray Diamond for a reasonable period of time to allow it to process it as evidence, take photographs, conduct an inspection and have it valued.

23. At the time of the U.S. Attorney's Office request, the Gray Diamond was in China for inspection by a potential customer. To assist the Government, L.J. West had the diamond returned to New York and on August 8, 2023, provided it to the F.B.I.

24. In mid-November 2023, three months after taking possession of the Gray Diamond, the US Attorney's Office informed L.J. West that it had completed its inspection, evaluation and valuation of the Gray Diamond and would return it. The US Attorney Office informed L.J. West that it was seeking forfeiture of all of the other diamonds that it held as evidence in the case against John Lee but that it had

determined that there was no basis for it to seek forfeiture of the Gray Diamond. The Government returned the Gray Diamond to L.J. West on November 20, 2023.

25. Upon return of the Gray Diamond, L.J. West resumed showing and consigning it to potential buyers. In February 2024, a representative of a large European luxury brand with which L.J. West regularly does business expressed an interest in acquiring the Gray Diamond. On or about February 26, 2024, L.J. West consigned the Gray Diamond to this customer. It is L.J. West's understanding that this customer asked for the Gray Diamond to use as part of a unique custom-made piece of finished jewelry. The customer has informed LJ. West that it has expended considerable resource in connection with designing, marketing and manufacturing a finished piece incorporating the Gray Diamond.

26. In April 2024, the US Attorney Office informed L.J. West that, contrary to its prior statement, it intended to seek forfeiture of the Gray Diamond. The US Attorney's Office stated that this decision was not based upon any new facts it had obtained or that it had a reason to doubt L.J. West's status as a bona fide purchaser of the Gray Diamond, but rather was based upon a new legal theory it had developed.

27. On May 24, 2024, the US Attorney's Office mailed L.J. West a Notice of Forfeiture stating that on May 10, 2024, the Court had entered an Amended Preliminary Order of Forfeiture as against John Lee [Dkt. No. 93] forfeiting the Gray Diamond to the United States. The Notice stated that L.J. West had 30 days from its receipt of the Notice to file a petition to avoid forfeiture of the Gray Diamond.

**Petitioner's Standing to Challenge the Government's Forfeiture Claim.**

28. L.J. West has both an ownership and a possessory interest in the Gray Diamond and will suffer an injury in fact should the Gray Diamond be forfeited to the United States.

29. L.J. West purchased and took possession of the Gray Diamond from ADS, in a transaction of sale that took place in New York on September 23, 2022. Upon information and belief, the seller had good title or voidable title to the Gray Diamond and under New York law, L.J. West therefore obtained good title to the Gray Diamond on September 23, 2022.

30. Even if ADS lacked good title or voidable title to the Gray Diamond, L.J. West nevertheless has a possessory interest in the Gray Diamond pursuant to New York law. Under New York law, one who has possession of goods has a right to retain possession as against anyone not having a better title. The United States, as the successor only to John Lee's interest in the Gray Diamond, cannot and does not have better title to the Gray Diamond than L.J. West.

31. L.J. West would suffer both economic and reputational harm should the Gray Diamond be forfeited to the United States.

32. The economic harm suffered by L.J. West would be the loss of valuable property for which L.J. West paid a substantial amount of money as well as the loss of the profit which it reasonably expects to realize from a sale of the Gray Diamond.

33. L.J. West would also suffer reputational injury from being unable to complete a transaction with an important customer who has expended considerable resources in connection with L.J. West's offer to sell the Gray Diamond to it. L.J. West's

reputation as a reliable counterparty would be diminished with this important customer and with others in the trade who learn of the event.

34. The reputational harm that L.J. West would suffer from forfeiture of the Gray Diamond would be attributable to the Government's conduct. L.J. West reasonably believed that after the Government returned the Gray Diamond in November 2023 stating that it had no basis to seek its forfeiture, the Government would not seek forfeiture of the Gray Diamond. L.J. West detrimentally and reasonably relied upon the Government's conduct and words in subsequently offering to sell the Gray Diamond.

**Petitioner's Interest in the Gray Diamond Is Not Subject to Forfeiture**

35. Title 18, Section 853(c), provides in relevant part that, property otherwise subject to forfeiture under that section which has been transferred to a person other than the defendant "may be subject to a special verdict of forfeiture and thereafter shall be forfeited to the United States, *unless the transferee establishes in a hearing pursuant to subsection (n) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.*" (emphasis added).

36. L.J. West purchased the Gray Diamond from a merchant who deals in goods of that type in an arms-length commercial transaction that conformed to all reasonable commercial standards and for which L.J. West made payment in full. L.J. West was therefore a bona fide purchaser for value of the Gray Diamond.

37. L.J. West did not believe, and was reasonably without cause to believe, that the Gray Diamond was connected in any way to criminal activity. L.J. West purchased it from a reputable diamond dealer with whom it has done business for decades. The price asked was not suspiciously low — indeed L.J. West thought the

9

asking price was too high and negotiated for several days to reach what it believed was a reasonable sale price. The seller offered to provide and did provide a recently issued original GIA certificate upon closing the sale. The documentation surrounding the transaction was exactly what a reasonable merchant would expect in a transaction of this type. In short, nothing about the Gray Diamond itself or the transaction by which it was acquired could reasonable have put L.J. West on notice that the Gray Diamond was connected to criminal activity or that it was subject to forfeiture to the United States.

38.   L.J. West was a bona fide purchaser for value of the Gray Diamond and was, at the time of its purchase reasonably without cause to believe that the Gray Diamond was subject to forfeiture to the United States. Therefore, pursuant to 18 U.S.C. § 853(c), the Gray Diamond is not subject to a special verdict of forfeiture and cannot be ordered forfeited to the United States.

**WHEREFORE**, Petitioner L.J. West Diamonds, Inc. respectfully requests that the Court enter an Order finding that the 15.88 carat fancy dark gray diamond identified as item (a)(5) on the May 10, 2024, Amened Preliminary Order of Forfeiture is not subject to forfeiture to the United States.

Dated:   New York, New York
         June 20, 2024

                             Clayman Rosenberg Kirshner & Linder LLP
                             Attorneys for Petitioner
                             L.J. West Diamonds, Inc.

                        By:  _____
                             Paul S. Hugel (admitted *pro hac vice*)
                             305 Madison Avenue – Ste 650
                             New York, New York 10165
                             (212) 922-1080
                             hugel@clayro.com

10

I declare under penalty of perjury that the foregoing is true and correct.

Executed:   New York, New York
    June 20, 2024.

                                      L.J. West Diamonds, Inc.

                              By: _____
                                 Lawrence J. West, President

11