**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,      )
                                 )
        Plaintiff,       )
                                 )
     vs.                ) Case No.
                                 )
JOHN LEE,                 ) 8:22-cr-00437-WFJ-SPF-1
                                 )
        Defendant.       )
_____ )

**TELEPHONIC STATUS CONFERENCE**
**BEFORE THE HONORABLE WILLIAM F. JUNG**

**June 26, 2024**
**11:01 a.m.**

(Proceedings recorded by mechanical stenography, transcript produced by computer-assisted transcription.)

**REPORTED TELEPHONICALLY BY:**
SUSIE K. CAYLER, FCRR, RPR
Federal Official Court Reporter
(515)778-5008 | reportercayler@gmail.com
801 North Florida Avenue, Tampa, Florida 33602

**APPEARANCES**


**FOR THE GOVERNMENT:**

RACHELLE DESVAUX BEDKE
United States Attorney's Office
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
813-274-6000
Rachelle.bedke@usdoj.gov

TIFFANY FIELDS
United States Attorney's Office
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
813-274-6000
Tiffany.fields2@usdoj.gov

ANITA CREAM
United States Attorney's Office
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
813-274-6000
Anita.cream@usdoj.gov

NICOLE ANDREJKO
United States Attorney's Office
400 West Washington Street, Suite 3100
Orlando, Florida 32801
407-648-7560
Nicole.andrejko@usdoj.gov

**FOR MOVANT JOSEPH GRUNBERG:**

JAMES MCCARROLL
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
212-549-0209
Jmccarroll@reedsmith.com

LARA TREINIS GATZ
Reed Smith LLP
200 South Biscayne Boulevard, Suite 2600
Miami, Florida 33131
786-747-0200
Lgatz@reedsmith.com

**APPEARANCES**

MARK BINI
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
212-549-0296
MBini@reedsmith.com

**FOR MOVANT A.T.:**

Stephanie Sciortino
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave NW
Washington, DC 20001
212-521-5400
Stephanie.sciortino@arnoldporter.com

Amy Jeffress
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave NW
Washington, DC 20001
212-521-5400
Amy.jeffress@arnoldporter.com

~~~~~

(Telephonic status conference starts at 11:01 a.m.)

THE COURT:  Good morning.  Case No. 8:22-437.  The United States versus Lee.  We're here for status on forfeiture.

Do I have an attorney for the government on?

MS. ANDREJKO:  You do, Your Honor.  You have a lot.  This is AUSA Nicole Andrejko.  Also joining me is AUSA Anita Cream, Rachelle Bedke, and Tiffany Fields.

THE COURT:  Thank you.

Now, do I have lawyers on for the Grunberg parties?

MR. BINI:  Yes, you do, Your Honor.

This is Mark Bini, and I'm also joined by my partner.

MS. GATZ:  This is Lara Treinis Gatz.  Good morning.

I think James McCarroll, our other partner, is also on.  So the three of us from Reed Smith.

Good morning, Your Honor.

THE COURT:  Thank you.

Now, do I have attorneys for L.J. West Diamonds?

I thought they filed a claim.

MS. ANDREJKO:  They said they were going to try to be present.  So I'm surprised they're not on the phone at this point.

THE COURT:  Well, right now we don't have anyone.

Is anyone on for Arnold & Porter, representing the victims?

MS. SCIORTINO:  Yes.  Hi.

This is Stephanie Sciortino.  I'm here on Arnold & Porter's behalf, and as well as Amy Jeffress.  The chief pro hac vice motion is forthcoming.

THE COURT:  And forgive me, pronounce that last name again, please.

MS. SCIORTINO:  Sciortino, S-c-i-o-r-t-i-n-o.

THE COURT:  All right.  So the purpose here is just to kind of flush out where we're at.

Ms. Andrejko, are you speaking now for the government?

MS. ANDREJKO:  For right now, yes, Your Honor.

THE COURT:  So my understanding is -- do we have two claims here?  We have the claims of the Grunberg party, and then we have claims of L.J. West.  Is that your understanding?

MS. ANDREJKO:  That is my understanding, Your Honor.

And the victim will also be filing a claim, I believe today, if they can get it straightened out with the ECF.  They will be filing a claim to the diamond that the Grunbergs have filed a petition for.  As well as the diamond that L.J. West has filed a claim for.

THE COURT:  So we have -- the West claim is the one diamond and the Grunberg claim is the others.  That's your understanding?

MS. ANDREJKO:  Yes, Your Honor.

THE COURT:  Mr. Bini, the attorney for Grunberg, you agree with that?

So you all are claiming on one diamond, and as far as we know, L.J. West is claiming on another?

MR. BINI:  Yes, Your Honor.

THE COURT:  And you have no other claim, other than as to that one diamond; correct?

MR. BINI:  That's right.

THE COURT:  All right.  And then, well, we don't have anyone from L.J. West on.

Ms. Sciortino, you expect that your client is going to file a claim as to both diamonds?

MS. SCIORTINO:  I'll let Ms. Jeffress answer that question.

MS. JEFFRESS:  That is correct, Your Honor.

Once we have permission to file, we'll file a petition that asserts claims to both.

THE COURT:  If you don't mind, see if you can kind of step that up speedwise.

Forgive me.  It's Jeffress?  Give us that last name.

MS. JEFFRESS:  Yes.  Thank you.

It's Jeffress, J-e-f-f-r-e-s-s.

THE COURT:  So your motion for pro hac vice is granted now.  I'll ask the deputy clerk who is in charge of the call -- have you filed that yet?

Ms. Jeffress, have you filed that pro hac motion?

MS. JEFFRESS:  We have not.  We understood that our client needed to be added as a party.  Shortly before this call, someone at the U.S. Attorney's Office provided us an email address for your clerk.  So we can email all of these to the clerk and hopefully that will be taken care of today.

THE COURT:  In abeyance, I'll ask the deputy clerk to grant your motions to appear.

Okay.  Now, let's go back.

So we got two diamonds.  We have one claim on both. And then the Grunberg on one and L.J. on the other.

Back to Ms. Andrejko.  Did I understand the L.J. West diamond that you all gave back -- or the feds gave back to L.J. West -- where is that piece?  Do you know?  That item?

MS. ANDREJKO:  That item?  I don't know for sure.  I believe L.J. West may have consigned that piece and that a third party may be in possession of it.

It's either -- it's either with that third party or with L.J. West.  The government does not have possession of it, though.

THE COURT:  All right.  Well, that's -- all right.

Let me just kind of go through the -- go through the three parties that are appearing here.

Government, tell me what you want to do.  Don't be shy.  Tell me, "Judge, just do this.  Judge, just do that."

What do you want me to do?

MS. ANDREJKO:  We are in an unusual position in the case, Your Honor, in the ancillary proceeding, in that the government is usually trying to forfeit the items that are listed in our preliminary order of forfeiture and in this case we're not trying to keep those diamonds for ourself.  We want the diamonds to go back to the rightful owner, which based on our resources is with the victim.

So at this point, it's unusual because we don't have a dog in the fight.  It's really between the victim and the Grundbergs and L.J. West.  So we were kind of hoping we would get some guidance from you as to how to proceed, because we were -- we had thought our motion to dismiss was going to be granted based upon the law and how the victim didn't have any knowledge of the fact of his jewel.  So we were hoping we would either visit the motion to dismiss or I got guidance on what the Court's hang up was with our motion to dismiss.

THE COURT:  So what you're telling me is you want me to consider your motion to dismiss and grant it; is that right?

MS. ANDREJKO:  We would love that, Your Honor.

THE COURT:  Tell me what do you want.  If I decided it's too complicated factually, then what do I do?  You tried -- you just made error, what do I do?

MS. ANDREJKO:  Then I think the litigation just really, then, comes down to the victim and L.J. West and the

Grunbergs to probably engage in additional discovery to flush out any factual issues that the Court may have, if there were any.

But if not, I mean, the -- we assumed your issues were factual when you said you wouldn't grant our motion to dismiss.  But that's the only thing that we could think of was the Court's issue there.

So my suggestion would be to have the parties litigate on -- allow discovery and then file dispositive motions or have a hearing for the Court to make a determination.

THE COURT:  I have the vaguest recollection, and I haven't visited this in a long time, but your motion to dismiss related to the Grunberg claim and also touched on the L.J. West claim?

MS. ANDREJKO:  Correct.  If the jewels were stolen from the victim then there is void title, and proper title could never pass to any other third-party purchaser no matter how many times the diamonds will be sold.

We see L.J. West in a different light than we do the Grunberg petitioners, as far as whether or not they were bona fide purchasers for value that reasonably property set for forfeiture.

I think we alluded to, maybe at the sentencing, L.J. West paid fair market value for their interest in that diamond,

and we do not think that the diamond was stolen.  However, we have concerns about whether or not the Grunberg petitioners should have known that that diamond was stolen.  They certainly didn't pay fair market value for their interest in that diamond.

UNIDENTIFIED COUNSEL:  Your Honor, may I interject?  I'd like to interject --

(Court reporter asks for clarification.)

THE COURT:  No, no, no.

So, Ms. Andrejko -- especially on the phone, there's only one channel of communication.

So, Ms. Andrejko, to what -- tell me, you said you thought -- you're suggesting -- and I'm not making any finding, of course, on any of this -- you're suggesting that L.J. West paid fair market value and didn't have notice.

By your likes, what does that mean?  They get to keep the diamond, or they have a claim for the amount against the victim?  What does that mean?

MS. ANDREJKO:  I think they're entitled to restitution for that amount, but because the diamond was stolen from the victim, title never passes to any subsequent purchaser.

So anybody who purchased the stolen diamonds from Mr. Lee would never have good title; therefore, they wouldn't have standing.

THE COURT:  So how would L.J. West, then, have any rights to restitution, and from whom?

MS. ANDREJKO:  From the defendant -- L.J. West is out money because they had paid fair market value for that specific diamond that they purchased.

They are out money and they weren't aware that the diamond was stolen, and it was foreseeable to the defendant that third parties would purchase this diamond and be out money.

THE COURT:  So by your likes -- assuming all this is true or accurate -- again, this is all hypothetical right now to me -- L.J. West would be entitled to restitution from John Lee?

MS. ANDREJKO:  Correct.

THE COURT:  Okay.  Do you have any evidence -- point you want to make before we go down to the Reed Smith folks and then we go down the line to Arnold & Porter after that?

MS. ANDREJKO:  I guess just for reference to the Court, generally if the Court is going to allow discovery before holding a hearing on cases for remission, what the Court does -- sorry, sorry, not for remissions -- on their petition, the Courts would generally give us a certain -- or the parties who are litigating a certain period of time to conduct discovery and then advise the Court whether or not they think the petitions could be dismissed by way of dispositive motion

or whether a hearing is needed on factual issues to determine who is entitled to the asset, if that's how it could work out.

THE COURT:  Let's hear from the Reed Smith people.

What do you want me to do?  What do I need to do?

You have one claim here, a motion to dismiss it. What do you want me to do?

MS. GATZ:  Thank you, Your Honor.  This is Lara Gatz.

It's safe to say we're disappointed.  We tried to work this out with the government because we can't believe that the restitution and the forfeiture issues are intertwined and are resolvable, and they are in the best position to know the facts of this case.  And I think that they should understand that Mr. Grunberg had no idea that the diamonds that he -- well, didn't purchase --

UNIDENTIFIED COUNSEL:  Wait.  I'm sorry --

THE COURT:  Obviously we're at an impasse.

MS. GATZ:  Understood.

THE COURT:  What do you want me to do?

MS. GATZ:  Your Honor, we would like you to order discovery.  We would like to take depositions of the victim. We would like to take depositions of some of the individuals that the government is suggesting that have better claims than our client.

We didn't -- as we indicated, we didn't purchase the diamond.  We loaned the diamond.  So, essentially, we disagree

factually, and we would ask the Court to order discovery depositions.  And we can set out in a letter to the Court tomorrow exactly who we want to depose and what other discovery we believe is necessary -- I'm sorry.  We received two documents, but no additional discovery in this matter.

We've asked for certain documents that the government has so far declined to give us.  So we're still hopeful we could work this out, but if not, Your Honor, we would like to have discovery.

And our client is out a substantial amount of money. He is a victim in this case, and he is entitled to be considered a victim and for restitution on the diamond.  We don't agree with the government's characterization of their motion to dismiss.

MR. BINI:  Your Honor --

THE COURT:  Stop.  Stop.  I haven't called on you yet.  We're on the phone.  You speak when you're spoken to.

I can have you all fly down here to Tampa.  We're trying to save your clients' money.

Now, Ms. Gatz, is there anything else that you want me to do?

You basically want to have discovery and sort of have a summary judgment proceeding, and then the government is there and we'd have like a little mini trial; right?

MS. GATZ:  Yes, Your Honor.

But I would ask if Mr. Bini, if that was him, if he has something to add, would he be allowed to just supplement what I said, please?

THE COURT:  If he has something to add.  Explain that.

Mr. Beek (sic) is one of your colleagues at Reed Smith?

MS. GATZ:  Yes, Your Honor.

THE COURT:  So have you concluded your comments, Ms. Gatz?

MS. GATZ:  Yes, Your Honor.  Thank you.

THE COURT:  Anyone else on behalf of Mr. Grunberg wish to speak?

MR. BINI:  Yes, Your Honor.  This is Mark Bini.  And thank you so much.

I just want to add some meat to the bones on what Ms. Gatz, my partner, mentioned in terms of the discovery.

I'm sorry I couldn't join you at the sentencing hearing -- my daughter was getting confirmed up here in New York -- but I did read the transcript.  And Your Honor mentioned permitting some limited video depositions.

And so we don't want to use a lot of time.  We want to be efficient with the time here, but we would like to get statements from the four key witnesses.  Victim two, whose name we won't use out of deference of him wanting to remain

anonymous; the individual who has the initials M.S., all of her statements to the government; the statements by John Lee to the government; and any statements by Solomon Moyel.

And then after that, we would hope to take video depositions, in short order, of victim two, John Lee, and Solomon Moyel.

I understand that M.S. is in jail in a foreign country.  So while we would like to take that deposition, I realize that would be too onerous, and we know -- and we would like to resolve this efficiently.

And I just wanted to note again, and that is, that the Grunbergs absolutely did not have notice that this was a stolen diamond.

THE COURT:  Okay.  I'm not finding that.  That's not at issue.

Anything else that you want me to do, Mr. Fini (sic)?

MR. BINI:  Mr. Bini, with a "B."  Sorry about that.

No, Your Honor.  Just some limited discovery.  And thank you again for your time and being so nice as to have it by telephone.

THE COURT:  Yeah.  Sorry.

Let's hear from Ms. Sciortino or your folks.

What do you want me to do?  You're claiming on both diamonds.  What do you want me to do?

MS. JEFFRESS:  Yes, Your Honor.  This is

Ms. Jeffress, from Arnold & Porter, on behalf of the victim.

Your Honor, our position is that these jewels and the other jewels and items were stolen from our client.

Your Honor has the guilty plea of Mr. Lee, which explains the circumstances of his theft scheme, and we would argue that no discovery is necessary from our client because the circumstances are clear from Mr. Lee's plea.

The petition which we will be able to file today, now that our victim motions have been granted -- our petition will explain that under New York law, the law is that a thief cannot convey title to stolen property.

And so we believe that these issues can be decided on the law with the facts that Your Honor already has.  And so our position is that under the law these jewels are our client's property and that they should be returned to our client.

THE COURT:  So you're going to file a claim on both diamonds.  And then I assume that what you just articulated here is you're going to file a motion to dismiss the two competing claims?

MS. JEFFRESS:  Your Honor, our petition is styled as that -- is a petition claiming title to both of these diamonds that have been ordered forfeited now.  That's the styling now.

THE COURT:  All right.  Tell me why it wouldn't help me or wouldn't help your cause.  And again, I haven't focused on these facts.  I have no idea, but I thought what you just

told me here that their -- as a matter of law, their claims are barred as a matter of New York law.  So why wouldn't you just file a motion to dismiss both of them?

MS. JEFFRESS:  We can file that as well, Your Honor. We had understood that the government had filed that -- has taken that position.

And so we would support the government's petition in that regard.

THE COURT:  Although, I don't think that they actually mentioned that L.J. West claim.

Listen, I appreciate very much -- I don't need a factual argument right now.  This is just for me to figure out what I'm supposed to do.

So did anybody from L.J. West show up on the phone in the last 20 minutes.  Identify yourselves, please.

All right.  I hear nobody.

Ms. Jeffress, how quickly -- you're going to file your claim today, you say?

MS. JEFFRESS:  Yes, Your Honor.

THE COURT:  So why don't we do this.

Ms. Jeffress is going to file her claim.  I'm actually going to -- let me go back to Ms. Andrejko real quick.

Ms. Andrejko, do you anticipate any other claims coming in?

MS. ANDREJKO:  We are waiting on verification from

one other party, who I had previously given until June 30th to file a claim. I suspect that if they do file a claim, it would not be for items that were stolen directly from the victim, but maybe some of the other items. So --

THE COURT: You mean items that Lee bought, or what?

MS. ANDREJKO: Correct.

THE COURT: Well, I don't want to jump the gun here. So let's do this.

Ms. Jeffress, please get your claims filed. Okay? And I would ask that you file an appearance. Here is ruling number one: Your claim is due by close of business June the 28th. Is that okay for you?

MS. JEFFRESS: Yes, Your Honor.

THE COURT: And then I want -- I'm going to -- for Ms. Andrejko, you don't anticipate any other claims; right?

MS. ANDREJKO: I don't think so. And if the Court would allow us -- if you would like to move to amend our motion to dismiss to include the L.J. West claim, we could do that.

THE COURT: Yes, I do.

So June 28th is when Ms. Jeffress's claim is due. Okay?

So I'm going to ask the deputy clerk to note this on the docket. There is a claim -- this is like bankruptcy court.

All claims are barred. New claims or admitted claims are barred July 10th at close of business.

Any amended claim or new claim is barred July 10th. I'm entertaining nothing else by close of business on the 10th. That's number two.

Number three, any government amended motion to dismiss -- and, Ms. Jeffress, I'm wanting you to file a motion to dismiss -- that is also due by close of business July 10th. Okay?  That's the third point.

And the final point is that any objections responsive to the motion to dismiss by the other parties, by L.J. West and by Grunberg, is due by July 22nd.

So that's the form ruling from today.  And then I'll get off the dime here and actually do some work.

And then replies are permitted, of course, but if you go to my website on the little web page, I permit replies. Anyone that wants to reply can, but I'm taking the stuff up in bailiwick -- or whatever the word is -- on the 22nd of July.

All right.  That's the four rulings from today.

Is that unclear or --

MS. GATZ:  This is Lara Gatz, Your Honor.

I think we had a court date of maybe July 9th.  Are you vacating that date given the new schedule?

THE COURT:  Yes, I am.

MS. ANDREJKO:  Nicole Andrejko.  The July 9th hearing is a restitution hearing, which is separate from the forfeiture issues.

THE COURT:  Yeah.  Well, we don't really know the bounds of restitution quite yet, do we?  You told me that you thought that L.J. was entitled to restitution from Lee.

So I know there's a temporal requirement for that. Is that jurisdictional, or can I extend?  You might ask your colleague if you're not sure.

MS. CREAM:  This is Anita Cream.  This is not jurisdictional.  This is a Supreme Court case, *United States v. Dahlin*, that says as long as the Court defers the restitution hearing, under 3663 -- I believe it's (d)(5), that if further delays are necessary, the Court can do that and retains jurisdiction to decide the restitution issue.

I think the concern is whether both have to be done at the same time or whether restitution has sufficiently different facts.  And I think Ms. Bedke is particularly concerned, as is Ms. Fields, that in the restitution setting the United States wouldn't be providing discovery to a third party.

And there are a variety of concerns that the nature of some of the material that the Grunberg petitioners are requesting -- it includes proffered information and other things that are protected that the government doesn't -- isn't at liberty to release.  And so I respectfully suggest we have to be careful about not confusing the two issues.

THE COURT:  Well, that's very well-taken.

So I find that the restitution is sufficiently complex and it is separate from forfeiture. And I'm hereby, pursuant to my authority, extending the restitution determination deadline date to September 30th of 2024.

So we have those four dates here on the forfeiture. And the deputy clerk is going to -- I'm not going to do an order. He's going to put that on the docket.

Anything else from the government?

MS. CREAM: Your Honor, if I might? This is Anita Cream again.

Are you envisioning, then, now that both forfeiture and restitution has been continued out, that you would first rule on the motion to dismiss and then we would revisit any issues regarding discovery?

THE COURT: Probably.

I'm going to read everything and see where we are, once I get the amended motion from you and your colleague and the -- Ms. Jeffress's motion and the response, yes, probably.

So right now we're not talking about discovery.

MS. CREAM: Perfect. And then one final question, Your Honor -- forgive me -- is that you had mentioned that there would be a deadline for the government to amend its motion to dismiss on July 10th, and that is certainly no problem.

I just want to clarify that if this one additional victim filed a claim to put up some of the purchased property, the things that Mr. Lee bought that are not at issue in these two claims, the government would still have the right to oppose that after July 10th, if it's not filed until July 10th.

THE COURT:  You would.  You would.

MS. CREAM:  Thank you so much.

THE COURT:  Anything else, Ms. Gatz or Mr. Bini?

MS. GATZ:  This is Ms. Gatz.  Nothing else, Your Honor.  Thank you so much for your time.

MR. BINI:  Thank you, Your Honor.

THE COURT:  Ms. Jeffress, anything else?

MS. JEFFRESS:  Nothing further from us.  Thank you, Your Honor.

THE COURT:  Thank you for your patience with me.  I'm trying to -- lot of moving parts here and I'm trying to shake out the bloody mess that our buddy John Lee has made.  Thank you again.

You have those dates.  I've got it on my little paper calendar here too.  I'll get on it.

Thank you, counsel.

(Telephonic status conference adjourned at 11:30 a.m.)

**CERTIFICATE OF REPORTER**

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

I, SUSIE K. CAYLER, FCRR, RPR, do hereby certify that I was authorized to and did stenographically report the foregoing proceedings; and that the foregoing pages constitute a true and complete computer-aided transcription of my original stenographic notes to the best of my knowledge, skill, and ability.

I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand at Tampa, Hillsborough County, Florida, this 2nd day of July 2024.

/s/ *Susie K. Cayler*
Susie K. Cayler, FCRR, RPR.
Federal Official Court Reporter
United States District Court
Middle District of Florida