# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA

v.

JOHN LEE

Case No. 8:22-cr-437-WFJ-SPF

The Honorable William F. Jung

### A.T.'s MOTION TO DISMISS
### L.J. WEST's AND THE GRUNBERGS' COMPETING CLAIMS

At the June 26, 2024 status conference, the Court directed A.T. to file a motion to dismiss L.J. West's claim in the Gray Diamond (Dkt. 115) and the Grunbergs' claim in the 103 Carat Diamond (Dkt. 64), both of which jewels this Court had previously ordered forfeited to the United States (Dkt. 93). A.T. thus moves, pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2, to dismiss petitions filed by L.J. West and the Grunbergs because they do not hold legal interest in the respective stolen items under New York law and therefore lack standing to contest their forfeiture under federal law. In addition, West and the Grunbergs are not bona fide purchasers for value and, in any event, A.T.—as the true owner of the forfeited jewels—has a superior interest in those items. Finally, the competing petitions should be dismissed as a matter of law and therefore no discovery is appropriate or necessary. A.T. submits the following memorandum of law in support of its motion.

## MEMORANDUM OF LAW

## Introduction

"Throughout the course of human history . . . the principle has been basic in the law that a thief conveys no title as against the true owner." *Menzel v. List*, 267 N.Y.S.2d 804, 819 (Sup. Ct. 1966) (citing *Silsbury v. McCoon*, 3 N.Y. 379, 385 (1850)). No subsequent buyer, "regardless of their good faith and ignorance of the theft," can obtain a good title from a thief. *O'Keeffe v. Snyder*, 83 N.J. 478, 488 (1980). The rule is especially potent in New York—the law of which applies here to determine petitioners' interest in the forfeited property—where there is "an overarching concern that New York not become a marketplace for stolen goods and, in particular, for stolen artwork." *Bakalar v. Vavra*, 619 F.3d 136, 141 (2d Cir. 2010).

This fundamental principle squarely resolves the forfeiture question in this case. John Lee, a convicted thief, stole extremely valuable jewels from A.T by inducing a trusted household employee to take the jewels from A.T.'s home in a foreign country. Plea Agreement, Dkt. 36 at 25-27. After receiving the stolen jewels in the United States, Lee immediately started selling and trading them to dealers in New York. *Id.* at 27. Two New York dealers, Lawrence J. West ("West") and Joseph Grunberg (collectively with his associates, "the Grunbergs"), purportedly acquired two of the stolen jewels from third parties. West acquired the 15.88 Carat Fancy Dark Gray Diamond ("Gray Diamond") (Dkt. 115) and the

Grunbergs acquired the 103.86 Carat D Color Internally Flawless Clarity Cushion Brilliant Cut Natural Diamond ("103 Carat Diamond") (Dkt. 64).

West and the Grunbergs claimed interest in the respective jewels in this ancillary proceeding. *See* Dkts. 64 & 115. Both of their claims, however, are meritless and should be dismissed. Under New York law, West and the Grunbergs could never acquire title from a thief. This means they do not have a *legal* interest in the stolen jewels and thus lack standing to contest forfeiture under 21 U.S.C. § 853(n)(2). *See United States v. Suarez*, 716 F. App'x 937, 938 (11th Cir. 2018) (whether petitioner "acquired legal title to the property" to contest its forfeiture is a question of state law).

No additional discovery can salvage the Grunbergs' and West's claims for three reasons.[1] First, the record is clear. Lee is a criminal who executed a "remarkably bold, remarkably reckless" theft scheme, culminating in Lee and M.S. directly stealing some of the most valuable and rarest jewels from their rightful owner A.T. Sent. Hr'g Tr. 44:18-45:19; Dkt. 36 at 25-27. No amount of discovery will change this established fact.

Second, the discovery proposed by the Grunbergs (Dkt. 79 at 13) is improper because it seeks to challenge the basis of the forfeiture. The Grunbergs insinuate that Lee did not steal from A.T. and thus they are entitled to probe "the nature of the relationship and agreements between" Lee and A.T. *See* Dkt. 79 at 13. This

---

[1] Although West has not requested discovery in this matter, A.T. reserves the right to object to any discovery requests from West in the future.

3

argument is nonsensical because if Lee had not stolen the jewels from A.T., he would not have been charged, prosecuted, convicted, and sentenced by this Court to 17 years in prison.  There is no question that Lee is a convicted thief, who together with M.S., directly stole jewelry from A.T.[2]  Dkt. 36 at 25-27.

Third, discovery is not warranted because it is futile and will only serve to harass A.T. who is the victim of Lee's crimes.  In response to the Grunbergs' concerns (Dkt. 79 at 13), A.T.'s counsel already represented to the Court and the Grunbergs that A.T. had no relationship with Lee whatsoever; nor had he known of M.S.'s relationship with Lee or her involvement in Lee's theft scheme.  Dkt. 123-5. Discovery will not add anything new to this case, other than expense, stress, and trauma already experienced by A.T. as the victim of Lee's crimes.  Moreover, it would further delay the return of the stolen jewels to A.T. as their rightful owner. At bottom, the Grunbergs are grasping at straws:  realizing that they lack standing to contest forfeiture because they did not—and could not—acquire legal interest from a thief, they ask this Court to authorize a fishing expedition.[3]  Such discovery is inappropriate.

---

[2] M.S., too, was charged, prosecuted, and convicted of the theft of jewels from A.T. in a foreign country.  Dkt. 56 at 12.  Had she not been involved in Lee's theft scheme, she would not have been convicted of the theft.

[3] Just recently during the status conference on June 26, 2024, the Grunbergs' counsel told the Court that they intend "to take video depositions" of A.T.  Dkt. 129 at 14.  The counsel, however, did not explain what topics or questions they intend to explore during those depositions or why those topics are relevant to the limited inquiry before this Court of the Grunbergs' standing under clear New York law.  In any event, A.T.'s counsel already addressed the discovery topics raised in the Grunbergs' opposition brief.  As detailed in the letter dated June 4, 2024, A.T. denies that he had any involvement in and/or knowledge of Lee's theft scheme.  *See* Dkt. 123-5.  Moreover, at Lee's sentencing, both Lee's counsel and the government reiterated that A.T. had no knowledge of, or involvement in, the scheme.

In sum, the Court should grant A.T.'s Petition and this motion to dismiss and deny the Grunbergs' and West's petitions. The stolen jewels should be returned to A.T. as their rightful owner. A contrary conclusion would effectively "punish . . . [a] crime victim[]"—A.T.—the result clearly not contemplated by Congress when it passed 21 U.S.C. § 853. *United States v. Emor*, 785 F.3d 671, 678 (D.C. Cir. 2015). The federal criminal forfeiture statute is designed to "target[] the perpetrator's interests downstream from the crime, not the upstream interests of the victim." *Id.* at 678-79.[4]

## I.   **Factual Background and Procedural History**

For the sake of brevity, A.T. incorporates by reference the relevant facts from his Petition contesting forfeiture. *See* Dkt. 123. A.T. is the rightful owner of the Gray Diamond, the 103 Carat Diamond, and other jewels stolen by Lee. Dkt. 102-1. In February 2008, A.T. bought the 103 Carat Diamond. Dkt. 123 at 4. In June 2009, A.T. purchased the Gray Diamond that was part of a larger platinum diamond ring. *Id.* at 3. In the summer of 2022, John Lee, together with A.T.'s vulnerable household employee groomed by Lee, stole the Gray Diamond, the 103 Carat Diamond, and numerous other extremely valuable, one-of-a-kind jewels from A.T.'s household in a foreign country and shipped them to Lee's locations in New Jersey and Florida. *Id.* at 5. A.T. knew nothing about the theft until he discovered

---

Sent. Hr'g Tr. 52:19-23 ("Obviously [A.T.] did not know anything about any of this, and [A.T] is truly a true victim."); *id.* at 41:10-13 ("[A.T.] learned that those items were gone . . . when M.S. disclosed to him that she had shipped these items to Mr. Lee.").

[4] West and the Grunbergs are not without remedy—if they think they were wronged, they are free to pursue claims against third parties from whom they acquired the stolen jewelry.

it later in the summer.  *Id.*  After learning about the theft, A.T. took immediate steps to identify perpetrators and locate his jewels.  *Id.* at 6.  But unfortunately, by the time Lee was arrested in November 2022, some of the jewels had been sold or exchanged by Lee to others.  *Id.* at 6-7.

The 103 Carat Diamond was ultimately sold or provided to the Grunbergs.  According to the Grunbergs, on September 14, 2022, while in New York City, the Grunbergs agreed to loan Solomon Moyal $4 million in exchange for the 103 Carat Diamond as a collateral.  Dkt. 64 at 2.  The fair market value of the 103 Carat Diamond, however, is more than four times that amount.  Dkt. 102-1 at 9.  Furthermore, the government represented to the Court that "[i]n stark contrast to [the Grunbergs'] version of events, Moyal, through counsel, has advised the United States that he (Moyal) *sold* the Diamond to Grunberg."  Dkt. 74 at 3 n.3 (emphasis in the original).

The Gray Diamond was acquired by West.  In mid-September 2022, Australia Diamond Supply ("ADS") brought the Gray Diamond to West's New York office to sell it to him.  Dkt. 115 at 3.  ADS provided West a certificate issued by Gemological Institute of America ("GIA") on August 30, 2022—nine days after the FBI notified GIA about the theft.  *Id.* at 4.  It is unclear why GIA issued the certificate to ADS given the FBI's notification.  In any event, West closed the deal a week later, on September 23, 2022.  *Id.* at 8.  For reasons unclear, West requested a second certificate for the Gray Diamond from GIA, which GIA issued on October 26, 2022.  *See id.* at 5.

As described in A.T.'s Petition (Dkt. 123), Lee's theft scheme was "remarkably bold" and "shocking." Sent. Hr'g Tr. 44:18-45:19. It involved "an unbelievable amount of money." *Id.* It was also very traumatic and distressing to A.T. and his family. Dkt. 123 at 7.

On November 6, 2023, Lee pleaded guilty to stealing jewels "directly from" A.T. Dkt. 36. This Court accepted Lee's plea, adjudged him guilty (Dkt. 44), and sentenced Lee to 17 years in prison (Dkt. 95).

As to the procedural background pertinent to the ancillary proceeding, on March 22, 2024, the Grunbergs filed a claim for the 103 Carat Diamond. Dkt. 64; *see also* Dkt. 79. The government filed its motion to dismiss the Grunbergs' claim on April 12, 2024. Dkt. 74; *see also* Dkt. 98. On June 20, 2024, West filed a claim for the Gray Diamond. Dkt. 115. On June 26, 2024, A.T. filed his Petition claiming title in the Gray Diamond and the 103 Carat Diamond. Dkt. 123. On June 26, 2024, the Court directed A.T. to file a motion to dismiss West's and the Grunbergs' forfeiture claims. Dkts. 119 & 129.

## II.   **Legal Standard**

Criminal forfeiture is governed by 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2. Under § 853(n)(2), "[a]ny person . . . asserting a legal interest in property which has been ordered forfeited to the United States . . . may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property."

The inquiry is a two-step process. First, a petitioner must show that he has standing—i.e., a "legal interest" in the forfeited property—to contest forfeiture.

*Suarez*, 716 F. App'x at 938.  This step of the analysis is governed by state law.  *Id.*
The applicable state law is "the law of the jurisdiction that created the property
interest being asserted."  *United States v. Furando*, 40 F.4th 567, 576 (7th Cir.
2022) (quotation marks omitted).[5]  If a petitioner has no legal interest in the
forfeited property under applicable state law, that is the end of the matter, "the
inquiry ends, and the claim fails for lack of standing."  *United States v. Timley*, 507
F.3d 1125, 1130 (8th Cir. 2007).  If, on the other hand, a court determines that a
valid legal interest in forfeited property exists under state law, then the analysis
proceeds to the second step.  *Id.*

At the second step, a petitioner must demonstrate by a preponderance of the
evidence that he falls into one of "two classes of petitioners" under § 853(n)(6).
*United States v. Kennedy*, 201 F.3d 1324, 1328-29 (11th Cir. 2000) (quotation marks
omitted).  The first class of petitioners includes third parties who had legal interest
in the forfeited property *before* the crime was committed.  § 853(n)(6)(A); *Timley*,
507 F.3d at 1130.[6]  The second class of petitioners includes bona fide purchasers for
value who acquired the property *after* the crime was committed.  § 853(n)(6)(B);
*Suarez*, 716 F. App'x at 938.[7]

---

[5] As explained below, because the transactions for both diamonds occurred in New York
City, the applicable state law is New York law.

[6] A.T. falls under this category as the original owner from whom forfeited property was
stolen.  A.T. therefore claims title and superior interest in the Gray Diamond and 103 Carat
Diamond under § 853(n)(6)(A).

[7] Both West and the Grunbergs contest forfeiture under § 853(n)(6)(B).

In the ancillary proceeding, a court may dismiss petitioner's claim "for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). Because the ancillary proceeding is civil in nature, the Federal Rules of Civil Procedure also apply. *United States v. Davenport*, 668 F.3d 1316, 1322 (11th Cir. 2012). A court therefore may dismiss a petitioner's claim under Federal Rule of Civil Procedure 12(b). *United States v. Marion*, 562 F.3d 1330, 1341-42 (11th Cir. 2009). In doing so, the court's review is limited to "the petition's four corners." *United States v. Fendick*, 2017 WL 4541565, at *2 (M.D. Fla. Oct. 11, 2017). The dismissal is warranted when the petitioner's claim for legal interest in the forfeited property is "implausible" on the face of the petition. *United States v. Preston*, 123 F. Supp. 3d 108, 117 (D.D.C. 2015).

## III. <u>Argument</u>

West's and the Grunbergs' petitions should be dismissed for three reasons. First, and most important, West and the Grunbergs lack standing to contest forfeiture under 21 U.S.C. § 853(n)(2) because they acquired no legal interest in the stolen jewelry under New York law.[8] Second, even if the court proceeds to the second step of the inquiry (which is unnecessary), West and the Grunbergs do not qualify as bona fide purchasers for value under § 853(n)(6)(B). Third, as shown in A.T.'s petition (Dkt. 123), under § 853(n)(6)(A), A.T.'s legal interest in the stolen

---

[8] The government similarly argues, for example, that the Grunbergs lack standing to contest forfeiture because Lee, as a thief, could not pass title in the 103 Carat Diamond to Moyal and the Grunbergs. Dkt. 74 at 8; *id.* at 13 (collecting cases and explaining the well-established principle that a thief cannot pass title); *see also* Dkt. 98 at 1-5.

jewels is superior to the interests of the government and other third-party petitioners.  Depriving A.T. of his jewels will thwart Congress's intent to protect innocent theft victims.  Such result would be inconsistent with the common law principle that a thief cannot pass a title to anyone, including to bona fide purchasers for value.

Finally, it is appropriate to dismiss West's and the Grunbergs' petition at this stage without discovery or hearing.  The relief claimed by petitioners is "implausible" on its face and unavailable to them as a matter of law.  Any discovery purporting to challenge the basis of forfeiture—that Lee stole the jewels from A.T.— is improper, amount to fishing expedition designed to harass A.T.

## 1.   West and the Grunbergs Never Acquired Legal Interest in the Stolen Jewels Under New York Law and Thus Lack Standing to Contest Forfeiture Under 21 U.S.C. § 853(n)(2)

At step one of the inquiry, a petitioner must show that he has standing—i.e., a "legal interest" in the forfeited property—to contest forfeiture.  *Suarez*, 716 F. App'x at 938.  The existence of the legal interest is determined by state law.  *Id.*  If state law does not recognize petitioner's legal interest in the forfeited property, the petition must be dismissed for lack of standing.  *Timley*, 507 F.3d at 1130.  Because New York law applies and does not recognize West's or the Grunbergs' legal interest in the jewels, the Court should dismiss their petitions for lack of standing.

### A.   New York law applies

"State law—or more accurately, the law of the jurisdiction that created the property interest being asserted—determines what interest the claimant has in the forfeited property."  *Furando*, 40 F.4th at 576 (quotation marks omitted).  Here,

there is no question that the applicable state law is New York law.  The Grunbergs, for instance, acknowledged that they "operate two family businesses in New York City," they negotiated the loan agreement with Moyal "in and around New York City," they agreed to provide the loan to Moyal against the 103 Carat Diamond as a collateral "in New York City," and they ultimately recognized that "New York law" applies to their loan agreement with Moyal.  Dkt. 64 at 1-2.  The same is true for West.  West operates a "business based in New York City," he negotiated the acquisition of the Gray Diamond in his "office in New York City," and acquired the Gray Diamond "in New York City."  Dkt. 115 at 1, 3, 8  Therefore, New York law applies to determine whether West and the Grunbergs acquired legal interest in the stolen jewels.  As shown below, they did not and, as such, they lack standing to contest forfeiture under 21 U.S.C. § 853(n)(2).[9]

### B.  West and the Grunbergs did not—and could not—acquire legal interest in the stolen jewelry from Lee under New York law

It is firmly established that under New York law a purchaser of stolen property does not have clear title, even if the purchase was made in good faith.

---

[9] The Grunbergs assert that New Jersey law applies because they acquired the 103 Carat Diamond from Moyal, who in turn obtained it from Lee in New Jersey.  Dkt. 79 at 10-13.  But New Jersey law does not help the Grunbergs.  For one, as in New York, in New Jersey a "thief acquire[s] no title and c[an] not transfer good title to others regardless of their good faith and ignorance of the theft."  *O'Keeffe*, 83 N.J. at 488 (1980).  The same principle also applies under Florida law.  *Anderson Contracting Co. v. Zurich Ins. Co.*, 448 So. 2d 37, 39 (Fla. Dist. Ct. App. 1984).  Second, the only relevant law for standing under 21 U.S.C. § 853(n)(2) is the law of New York because it is the jurisdiction that purportedly "created the property interest being asserted" by the Grunbergs in this ancillary proceeding.  *See Furando*, 40 F.4th at 576.  Moreover, the fact that the theft and subsequent transfers occurred in other jurisdictions (e.g., a foreign country, New Jersey, or Florida) does not defeat the application of New York law.  *See United States v. Provenzi*, 2022 WL 2467658, at *8 (W.D.N.Y. July 6, 2022) ("[T]he fact that the alleged victim and successor in interest

*Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 317 (1991). That is because a "good faith purchaser simply cannot obtain title to stolen property"—"*a thief has no title to give.*" *United States v. Crawford Tech. Servs.*, 2004 WL 744670, at *5 (S.D.N.Y. Apr. 7, 2004) (emphasis added). This axiom applies "even if there have been several subsequent buyers and even if each of those buyers was completely unaware that she was buying stolen goods." *Bakalar*, 619 F.3d at 140-41 (quotation marks omitted).

Courts have applied this fundamental principle time and time again in stolen artwork and stolen jewelry cases. In *Gemological Institute of America v. Zarian*, for example, GIA initiated an interpleader action to resolve the ownership dispute over a 11.57 carat diamond that was stolen and later submitted to GIA for grading. 2006 WL 2239594, at *1 (S.D.N.Y. Aug. 4, 2006). The diamond was stolen from Zarian in Dubai and later purchased by the Siyance Brothers from a third party and submitted to GIA for evaluation in New York. *Id.* The court explained that under New York law, "a purchaser of personal property cannot acquire good title from a seller who stole the property." *Id.* at *3. The court concluded that because "the diamond was stolen from Zarian in Dubai, if the sale or transfer took place in New York, the diamond is rightfully Zarian's." *Id.* The same is true here. The sale of the jewels to West and the Grunbergs happened in New York. Since the jewels

---

reside in Italy is not significant to New York's policy of protecting owners generally . . . New York clearly has the greater interest in seeking to preserve the integrity of transactions within its borders and preventing the state from becoming a marketplace for stolen goods.") (quotation marks omitted) (cleaned up).

were stolen from A.T., under New York law they are rightfully A.T.'s.  Nothing more is needed for the analysis.

Another example is *Reif v. Nagy*, in which the heirs of a Holocaust victim brought an action to recover paintings that were looted by the Nazis and 70 years later ended up in a private London gallery.  80 N.Y.S.3d 629, 631 (Sup. Ct. 2018). The gallery maintained that it purchased the paintings in good faith without knowledge of their tragic provenance.  *Id.* at 634.  The court categorically rejected this defense because "a thief cannot convey good title."  *Id.* at 634.  "While defendants argue that they purchased the Artworks in good faith, title remains with the original owner or his heirs absent a valid conveyance of the works."  *Id.* Because the gallery failed to show that the Holocaust victim "ever voluntarily transferred the Artworks," the gallery "cannot credibly allege that [it] owned them." *Id.* at 634.  The same is true here.

The rule that a thief cannot pass title is fatal to West's and the Grunbergs' forfeiture claims.  West claims that he has "an ownership and a possessory interest in the Gray Diamond" because he acquired a purportedly "good title or voidable title" from a reliable counterparty.  Dkt. 115 at 8.  But neither West nor his counterparty could have acquired any title from Lee or any subsequent purchaser because Lee never had any title over the Gray Diamond in the first place.  *Bakalar*, 619 F.3d at 140-41.  The Grunbergs' claim over the 103 Carat Diamond fares no better.  Again, Lee could not have passed title to Moyal and then to the Grunbergs because Lee, as a thief, "ha[d] no title to give."  *Crawford Tech. Servs.*, 2004 WL

13

744670, at *5.[10]  Regardless of whether West or the Grunbergs qualify as bona fide purchasers for value under the forfeiture statute (they do not), the petitioners *in principle* could not have acquired legal interest in the stolen jewelry under New York law—*the prerequisite* for standing to challenge forfeiture under 21 U.S.C. § 853(n).

### C.  West and the Grunbergs lack standing to contest forfeiture under 21 U.S.C. § 853(n)

Because New York law does not recognize West's and the Grunbergs' interest in the stolen jewelry, "the inquiry ends, and the claim fails for lack of standing." *Timley*, 507 F.3d at 1130.

Federal courts must dismiss third-party claims for the lack of standing when a petitioner has no "legal interest" in forfeited property under state law.  *See, e.g.*, *United States v. Lazare Kaplan Int'l Inc.*, 849 F. App'x 906, 907-08 (11th Cir. 2021) (petitioner lacked standing to challenge forfeiture of the stolen jewelry because he accepted insurance money earlier and thus "no longer ha[d] an interest in the property" under Alabama law); *United States v. Swartz Fam. Tr.*, 67 F.4th 505, 516 (2d Cir. 2023) (petitioner lacked standing to challenge forfeiture of company's assets because her "equity interest" in the LLC was "not a legal interest" under Delaware, New York, or Florida law); *United States v. Recendez*, 2024 WL 1197705, at *3-4 (D.

---

[10] The Grunbergs also argue that Lee had "power to transfer rights in the Diamond under the merchant entrustment rule" under New Jersey law.  Dkt. 79 at 7-10.  The argument is baseless.  As explained in the government's reply brief, the merchant entrustment rule does not apply because (1) Lee is not a "merchant"; he is a thief; and (2) the record is clear that A.T. never "entrusted" Lee with the 103 Carat Diamond (or any other diamond)—Lee stole them from A.T.  Dkt. 98 at 3-5.

Utah Mar. 20, 2024) (petitioner lacked standing because her interest in the real property was based on an oral contract and thus was not cognizable under Utah's Statute of Frauds).

So too here.  Because West's and the Grunbergs' interests in the stolen jewels are not recognized under New York law, the petitioners lack standing to challenge forfeiture under 21 U.S.C. § 853(n).  "Where a petitioner is not able to demonstrate a prima facie entitlement to relief, courts have routinely dismissed third-party petitions without a hearing." *Pacheco v. Serendensky*, 393 F.3d 348, 351 (2d Cir. 2004).  Therefore, the petitioners' claims are deficient and should be dismissed on this ground alone.

### D.    Discovery is inappropriate, futile, and will only serve to harass A.T.

West and the Grunbergs may claim that the record is not yet complete and thus request discovery and hearing before the Court rules on this motion.  But this Court has all the record evidence it needs to rule now without a hearing for three reasons.  First, the record is complete and clear.  Lee is a thief who stole valuable jewelry from A.T.  Lee was arrested, prosecuted, and found guilty for those crimes.

Second, the discovery proposed by the Grunbergs (Dkt. 79 at 11-13) seeks to challenge the basis for forfeiture—which they cannot do.  *See Davenport*, 668 F.3d at 1321 ("[T]hird parties . . . cannot challenge or relitigate a preliminary order's finding of forfeitability").  Contrary to the record evidence, the Grunbergs essentially suggest that Lee is not guilty of the theft because A.T. somehow knew, authorized, or acquiesced to the scheme.  Dkt. 79.  The Grunbergs fail to support

15

this outlandish claim with anything.  If that were true, Lee would not have been convicted of theft and the jewels would not have been forfeited as proceeds of Lee's crimes.  Dkt. 93.  The Grunbergs simply "cannot relitigate the merits of the prior forfeitability determination" and thus their potential discovery requests should be denied on that basis alone.  *See United States v. Dahda*, 2020 WL 7056099, at *5-6 (D. Kan. Dec. 2, 2020) (petitioner improperly sought discovery on "documentation and receipts . . . as part of an attempt to establish that the $84,700 was not related to the drug conspiracy").

Third, discovery is futile and amounts to nothing more than a fishing expedition designed to harass the victim—A.T.  A.T. has already addressed the concerns the Grunbergs raised in their briefing.  Specifically, A.T. denied—in the strongest possible terms—the Grunbergs' unfounded allegations of A.T.'s awareness of or involvement in Lee's scheme.  Dkt 123-5 at 2.  Any further discovery is inappropriate and would only serve the purpose of the Grunbergs' harassing the victim of this crime.  *See Performance Indus. Mfg., Inc. v. Vortex Performance Pty Ltd.*, 2019 WL 78840, at *8 (M.D. Fla. Jan. 2, 2019) (Jung, J.) (even "limited" discovery is not allowed when "the record is bereft of any indication of . . . misconduct" and "discovery will be a fishing expedition") (quotation marks omitted).

Moreover, in the context of criminal forfeiture, "[n]o amount of discovery" is warranted when there is a "legal certainty" about a third-party's standing to contest forfeiture.  *United States v. Welch*, 2023 WL 4744789, at *9 (D. Idaho July 24, 2023); *see also United States v. Nolasco*, No. 04-617, slip op. at 13 n.7 (D.N.J. June 7, 2006)

("Discovery cannot be granted to litigate a settled issue" of whether a third party has standing to contest forfeiture).

Thus, the Court should dismiss West's and the Grunbergs' petitions for the lack of standing without discovery or hearing.

### 2. West and the Grunbergs Are Not Bona Fide Purchasers For Value Under 21 U.S.C. § 853(n)(6)(B)

Even if the Court reaches the second step of the forfeiture inquiry (which is unnecessary), West and the Grunbergs fail to demonstrate by a preponderance of the evidence that they qualify as "bona fide purchaser[s] for value of the right, title, or interest in the property and w[ere] at the time of purchase reasonably without cause to believe that the property was subject to forfeiture" under § 853(n)(6)(B). Whether a petitioner is a bona fide purchaser is also informed by reference to state law. *See Suarez*, 716 F. App'x at 938 (applying Florida law definition of the bona fide purchaser under § 853(n)(6)(B)); *United States v. Lavin*, 942 F.2d 177, 185 (3d Cir. 1991) (the bona fide purchaser exception is derived "essentially from hornbook commercial law").

Under New York law, a dealer acting in good faith must "inquire into the title . . . particularly if there are warnings that something is wrong with a transaction." *Morgold, Inc. v. Keeler*, 891 F. Supp. 1361, 1368 (N.D. Cal. 1995) (citing New York cases). Indeed, "[i]n the context of the art market," New York law does not permit "commercial standards of sharp trade practice or indifference as to the provenance, i.e., history of ownership or the right to possess or sell an object d'art." *Davis v. Carroll*, 937 F. Supp. 2d 390, 423 (S.D.N.Y. 2013) (quoting *Porter v. Wertz*, 416

N.Y.S.2d 254, 257 (App. Div.1979)).  Rather, in New York, a dealer "might be required under the UCC to take additional steps to verify the true owner of" a piece of artwork.  *Brown v. Mitchell-Innes & Nash, Inc.*, 2009 WL 1108526, at *5 (S.D.N.Y. Apr. 24, 2009).  The same is true for unique pieces of jewelry, like the ones at issue in this case.  *Blue River Gems Inc. v. S.V. & V. Diamond Corp.*, 47 N.Y.S.3d 860, 863 (Sup. Ct. 2016) (noting that case law dealing with "pieces of art" is "instructive in th[e] matter of a unique and expensive piece of jewelry").

Here, West failed to take "additional steps" to verify the provenance of the Gray Diamond.  *Brown*, 2009 WL 1108526, at *5.  ADS approached West with an offer to sell the extremely rare Gray Diamond in mid-September 2022.  Dkt. 115 at 3.  The Gray Diamond was likely visibly mutilated because Lee chopped two carats from the original platinum ring after he stole it.  ADS showed West a GIA certificate that was issued on August 30, 2022—*just about a month after* the Gray Diamond was stolen by Lee from A.T. and *just nine days after* the FBI notified GIA about the theft.  *Id.* at 4.  Without further investigation into the provenance of the visibly mutilated diamond, West closed the deal with ADS a week later on September 23, 2022.  *Id.* at 8.  It is also unclear why GIA issued a certificate given the FBI's notification.

Even though West might have "conduct[ed] trivial due diligence," his "lackadaisical" attitude prevents him from being a bona fide purchaser for value.  *Davis*, 937 F. Supp. 2d at 423.   "[I]t is precisely such commercial indifference to ownership or the right to sell [that] facilitates traffic in stolen works of art."  *Id.*

(quotation marks omitted).  Had West inquired into the origin of the modified Gray Diamond, he would have learned that it was stolen from A.T. and that ADS had no right to sell it to West.

The Grunbergs, too, do not qualify as bona fide purchasers for value.  They never asked Moyal about the provenance of the extremely expensive $17 million, 103 Carat Diamond.  Such lack of due diligence is especially stunning because the Grunbergs' dealings with Moyal never exceeded a couple of hundreds of thousands of dollars in the past.  *See* the Grunbergs' Letter to United States Attorney's Office dated August 22, 2023 (listing the Grunbergs' transactions with Moyal).  Moreover, according to Moyal's counsel, and contrary to what the Grunbergs previously told the government, Moyal "sold" the 103 Carat Diamond to the Grunbergs.  Dkt. 74 at 3 n.3.  The transaction in which a dealer buys a precious stone with a fair market value of $17 million jewel for less than $4 million is not in good faith and thus the Grunbergs do not qualify as bona fide purchasers for value.  *See Matter of Mallard Assocs.*, 463 F. Supp. 1259, 1260 n.2 (S.D.N.Y. 1979) ("[T]he wide disparity between the purchase price and the fair market value of the [property] is relevant to the issue of [the purchaser's] good faith.").  As the government has explained, the Grunbergs are not bona fide purchasers for value because "the Grunberg petitioners should have known that the diamond was stolen" as "[t]hey certainly didn't pay a fair market value for their interest in that diamond."  St. Conf. Hr'g Tr. at 10

Regardless, and as discussed in detail above, "[a] bona fide purchaser for value" is the one who "*obtain*[s] *a good title* from one who has a voidable title."

*Kaminsky v. Karmin*, 589 N.Y.S.2d 588, 590 (1992) (emphasis added).  But Lee did not have any title—neither good nor voidable one.  A thief, like Lee, simply "has no title to give." *Crawford Tech. Servs.*, 2004 WL 744670, at *5.  As such, neither Grunbergs (with Moyal) nor West (with ADS) could have ever acquired a valid title from Lee.

### 3.   A.T. Has Superior Legal Interest in the Stolen Jewelry Under 21 U.S.C.§ 853(n)(6)(A)

There is no question that A.T. has standing to contest forfeiture of the Gray Diamond and the 103 Carat Diamond under 21 U.S.C. § 853(n)(2) because A.T. has a cognizable legal interest in the stolen items under any applicable state law.  *See, e.g.*, N.Y. U.C.C. Law § 2-403 ("A purchaser of goods acquires all title which his transferor had or had power to transfer.").  In fact, A.T. is *the only rightful owner* of the stolen jewels.

As detailed in A.T.'s Petition, it is undisputed that A.T. acquired title in the 17.42 carat platinum diamond ring, from which the Gray Diamond was later extracted, by purchasing it from Moussaieff Jewellers Ltd. in June 2009.  Dkt. 123 at 8.  A.T. also purchased the 103 Carat Diamond as part of a necklace on February 27, 2008.  *Id.* at 9.  From that time, A.T. had enjoyed possession of the Gray Diamond and the 103 Carat Diamond up until Lee and M.S. stole those and other jewels from A.T.'s household.  *Id.* at 8-9.  The government has also recognized that A.T. has superior legal interest in both items.  *Id.*[11]

---

[11]  The government told A.T. and this Court that it "will not seek a final order of forfeiture for the jewelry stolen from [A.T.]."  Dkt. 74 at 3 n.2.  Instead, the government will seek to extinguish Lee's ownership claims (if any) and "return the stolen property to *the rightful*

Having established standing, A.T. can now show that his interest in the forfeited jewels was superior to Lee's interest at the time of the commission of the crime under § 853(n)(6)(A).  *See United States v. Ramunno*, 599 F.3d 1269, 1273 (11th Cir. 2010).  The familiar principle applies:  a thief gains no title in the proceeds of his crimes.  Lee is a convicted thief.  Lee admitted in his plea agreement that he persuaded M.S. to enter A.T.'s safe—without A.T.'s knowledge or consent— and take his jewelry.  *See* Dkt. 36 at 26; Dkt. 56 at 3.  He further admitted that he stole the jewels, including the Gray Diamond and the 103 Carat Diamond, directly from A.T.  Dkt. 36 at 26.  By stealing the Gray Diamond and the 103 Carat Diamond from A.T., Lee acquired no right, title, or interest whatsoever.  Therefore, A.T.'s interest in the stolen jewelry is superior to a non-existent interest of Lee.

Federal courts have recognized that the original owner's legal interest in the forfeited property is superior to the purported interest of a thief.  *See, e.g.*, *United States v. Monzon*, 2009 WL 361095, at *2 (S.D. Fla. Feb. 9, 2009) (noting that the government recognizes that a robbery victim has a pre-existing, superior interest in stolen funds and agrees to amend the order of forfeiture to recognize that interest); *Emor*, 785 F.3d at 678 (holding that if the petitioner "proves [a defendant] stole or embezzled" petitioner's property, the petitioner "could establish possession of legal title or a superior legal interest at the time of the commission of the acts which gave rise to the forfeiture") (quotation marks omitted);  *United States v. Bailey*, 926 F.

---

*owner* [referring to A.T.]."  *Id.* (emphasis added).  In the government's view (which also overlaps with A.T.'s argument, *supra* 1.B), the title in the stolen property "never passed to" Lee and therefore, "he could not pass good title to any subsequent purchaser."  *Id.*

Supp. 2d 739, 770 n.20 (W.D.N.C. 2013) ("[A] thief [does not] ha[ve] an interest in stolen property that is superior to the interest of the very persons from whom he stole."); *United States v. Abdullahi*, 2019 WL 3824233, at *2 (W.D. Wash. Aug. 14, 2019) (noting that the government recognizes that a rightful owner of a stolen firearm had "vested interest" in it and may recover it upon conclusion of the forfeiture proceeding). Thus, as a matter of law, A.T.'s interest in the stolen jewelry is superior to the interest of Lee.

A.T.'s interest is also superior to the interests of any third party, including any potential good faith buyers. Although courts have not addressed this question directly,[12] it is evident that Congress did not intend to elevate the rights of a thief— and by extension the rights of third parties who acquired stolen property from a thief—over the rights of the owner of the property from whom it was stolen. In *Emor*, the D.C Circuit explained that "Congress designed criminal forfeiture to punish criminal defendants, not crime victims, and *clearly did not contemplate section 853(c) being used to defeat a victim's property interest.* To put it another way, the vesting statute targets the perpetrator's interests downstream from the crime, not the upstream interests of the victim." 785 F.3d at 678-79 (emphasis added).

Prioritizing third parties' rights over the rights of theft victims under the forfeiture statute will be anomalous and lead to inconsistent treatment of theft victims in federal and state courts. To illustrate the point: the Gray Diamond is

---

[12] The Court does not need to address this question because West and the Grunbergs lack standing to contest forfeiture in the first place and, at any rate, they do not qualify as bona fide purchasers for value.

currently held by West's consignee in Europe.  Dkt. 115 at 2.  If so, West's (or any other third party's) possession of the Gray Diamond is patently wrongful under New York law.  Regardless of West's purported bona fide purchaser status, Lee did not (could not) pass title to West.  Accordingly, A.T. can sue West for conversion under New York law to recover the stolen Gray Diamond if West does not return it.  *See Kunstsammlungen Zu Weimar v. Elicofon*, 678 F.2d 1150, 1161 (2d Cir. 1982) ("Under New York law an innocent purchaser of stolen goods becomes a wrongdoer only after refusing the owner's demand for their return.")  The federal criminal forfeiture statute should not be read inconsistently with state laws protecting the rights of theft victims vis-à-vis subsequent purchasers of stolen goods.[13]

## Conclusion

For the foregoing reasons, the Court should find that A.T. has superior interest in the Gray Diamond and the 103 Carat Diamond vis-à-vis the United States, West, and the Grunbergs, dismiss West's and the Grunbergs' petitions for the lack of standing or any other ground, and order the Gray Diamond and the 103 Carat Diamond to be returned to A.T. as their rightful owner.

---

[13] That is not to say that the Grunbergs or West are without recourse.  They can sue third parties from whom they acquired A.T.'s stolen jewelry to recover money they had paid for it.

Dated:        July 10, 2024
              Washington, D.C.

Respectfully submitted,

/s/    *John B. Bellinger III*

John B. Bellinger III (*pro hac vice*)
Amy Jeffress (*pro hac vice*)
john.bellinger@arnoldporter.com
amy.jeffress@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Telephone: (202) 942-6599
Facsimile: (202) 942-5999

*Counsel for Petitioner A.T.*

## **Certificate of Service**

I hereby certify that on July 10, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system that will send a notice of electronic filing to counsel of record.

*/s/ Stephanie Sciortino*

Stephanie Sciortino

*Counsel for Petitioner A.T.*
